## In re MATTHEW ELLIS' ESTATE.

Argued Nov. 10, 1893. Affirmed Dec. 6, 1893.

No. 8455.

55 401
§23LRA287n
52LRA201n

### Collusion to obtain divorce does not affect the jurisdiction.

Collusion and agreement between the parties to an action for divorce as to the judgment to be rendered does not affect the jurisdiction, nor render the judgment entered void.

### Probate Code properly enacted.

The act of 1889 known as the "Probate Code" was properly passed.

### If contents of a lost or destroyed will cannot be shown.

Proof that a deceased party executed a will, which he afterwards destroyed, while *non compos* will not defeat an application for an administrator, unless its contents can be proved with such degree of certainty that it may be established as a will.

### Authentication of copy judgment of another state to be evidence here.

A copy of the proceedings of a court of another state is admissible here if authenticated according to the statute of this state, though not according to the act of congress.

### Judgment Roll is proof of the judgment record.

An authenticated copy of a judgment roll is evidence of all that is properly contained in it, and is evidence *prima facie* that the judgment was properly entered in the judgment book.

### Place of trial as affecting jurisdiction.

That an action was tried in a county other than that declared by statute the proper county for its trial does not go to the jurisdiction.

### Wife induced by intimidation to bring suit for divorce.

That the wife, the plaintiff in an action for divorce, was induced to bring it by persuasion, ill treatment, and threats by the husband that he would continue such ill treatment unless she brought the action, does not affect the validity of the judgment in a collateral proceeding.

### Voluntary appearance in the court of another state confers jurisdiction.

Where, in an action in the court of another state for divorce, both parties voluntarily appear, and submit to the jurisdiction, they are bound by the judgment, and cannot avoid it in a collateral proceeding

v.55M.—26

in this state by proof that when the action was brought and judgment rendered neither of them was a resident in that state, and that both were residents in this state.

Appeal by Rachel Ellis, Jane Walker and Charles Ellis, from an order of the District Court of Ramsey County, *Chas. E. Otis*, J., made May 24, 1893, denying their motion for a new trial.

Flora Ellis of St. Paul filed her petition in the Probate Court of Ramsey County, December 13, 1892, praying to be appointed administratrix of the estate of Matthew Ellis, deceased. She represented that she was his widow, that he died in that City December 7, 1892, intestate and without issue or surviving parent, and possessed of real and personal property valued at $60,000. Jane Walker, a sister, and Charles Ellis, a brother, contested the application, on the ground that deceased executed a will giving to them a large part of his property which he did not revoke, while possessing testamentary capacity. Rachel Ellis also contested, on the ground that she was his widow and that a divorce obtained by her in Wisconsin at his request on March 27, 1884, was void for want of jurisdiction of the Wisconsin Court over the parties, they being residents of St. Paul, and that his subsequent marriage to the petitioner, Flora Ellis, on September 2, 1886, was void. The Probate Court on January 26, 1893, granted the petition and appointed Flora Ellis sole administratrix. The contestants severally appealed to the District Court. A return was made and the contention was heard March 22, 1893. It was shown that deceased made a will in July, 1891, which he destroyed December 31, 1891, but its contents were not satisfactorily proved. He was in ill health and his brother and sister claimed he had not testamentary capacity at the time he destroyed the will, but the Court refused to receive evidence of his incapacity to revoke the will, because the provisions of the will were not clearly and distinctly proved by two credible witnesses to the satisfaction of the Court. The Court found that the divorce was valid, that Flora Ellis was the lawful wife of the deceased, that he died intestate and that she was entitled to letters of administration upon his estate and directed judgment affirming the determination of the Probate Court. The

appellants made and settled a case containing all the evidence and their exceptions and moved for a new trial. This was denied and they appealed.

*F. G. Ingersoll* and *Chas. N. Bell*, for appellants.

A court sitting in divorce proceedings is a court with local, limited, special and statutory jurisdiction only. It has no authority whatever to hear or consider divorce matters between nonresidents or citizens of sister states. *State* v. *Armington*, 25 Minn. 29; *Ditson* v. *Ditson*, 4 R. I. 87; *Hoffman* v. *Hoffman*, 46 N. Y. 30; *People* v. *Dawell*, 25 Mich. 247.

The subject matter of the divorce action was not the question of divorce in general, but was the marriage relation between the parties to that suit; and the subject matter neither was, nor could be, within the jurisdiction of the Wisconsin Court. The parties had no domicile within the State from which the Court derives its power. The State itself, having no jurisdiction over the marriage relation between such parties, could confer none upon its courts. *Reed* v. *Reed*, 52 Mich. 117; *Thompson* v. *Whitman*, 18 Wall. 457; *Prosser* v. *Warner*, 47 Vt. 667; *Sewall* v. *Sewall*, 122 Mass. 156; *Commonwealth* v. *Blood*, 97 Mass. 538; *Williams* v. *Williams*, 63 Wis. 58; *Cook* v. *Cook*, 56 Wis. 195.

The divorce on its very face is void, as it shows there was no issue on the question of residence, and shows consent, collusion, a trade, and is not entitled to respect as a decree when presented in our Courts. The fact that the Wisconsin court attached to it its name and seal does not and cannot purge it of its invalidity. *Young* v. *Young*, 17 Minn. 181; *Olmstead* v. *Olmstead*, 41 Minn. 297; *Bomsta* v. *Johnson*, 38 Minn. 230.

It nowhere appears that the judgment or order for judgment was ever entered in the Judgment Book of St. Croix County. Until a decree or judgment is entered in the Judgment Book, it is not operative. *Rockwood* v. *Davenport*, 37 Minn. 533.

While the contents of a lost will cannot be proved unless the evidence is clear, full and satisfactory, it need not be such as to remove all reasonable doubt as to the substantial parts of the paper.

If the contents of a lost will are not completely proved, probate will be granted to the extent to which they are proved. *Thornton* v. *Thornton*, 39 Vt. 122; *In re Page*, 118 Ill. 576; *Early* v. *Early*, 5 Redf. 376; *Kitchens* v. *Kitchens*, 39 Ga. 168.

The Probate Code of 1889 never became a law as required by the Constitution. Art. 4, § 20. The Journals of the House and Senate are before this Court, and it will take judicial notice of the records and journals. The Probate Code is House File No. 1063. It was read the first and second times and referred to the committee of the whole. There was no suspension of the rules, or vote on a suspension of the rules, when this bill was read the second time on March 25. On April 17, the bill was recommended to pass by the committee of the whole. On April 18, the bill was read the third time and put upon its final passage. *Hull* v. *Miller*, 4 Neb. 503; *Spangler* v. *Jacoby*, 14 Ill. 297; *People ex rel* v. *Mahaney*, 13 Mich. 481; *Fordyce* v. *Godman*, 20 Ohio St. 18; *McCulloch* v. *State*, 11 Ind. 424.

*M. L. Countryman* and *Stringer & Seymour*, for respondent.

A judgment of divorce cannot be impeached in a collateral proceeding, merely because the parties to it had been guilty of collusion and fraud on the court. So long as the judgment stands and until directly assailed, it is entitled to full faith and credit as a judgment, and is conclusive between the parties. *Hood* v. *Hood*, 11 Allen, 196; *Greene* v. *Greene*, 2 Gray, 361; *Baugh* v. *Baugh*, 37 Mich. 59; *Zoellner* v. *Zoellner*, 46 Mich. 511; *Sanford* v. *Sanford*, 28 Conn. 628; *Smith* v. *Smith*, 28 Ia. 516; *Cone* v. *Hooper*, 18 Minn. 531; *Hotchkiss* v. *Cutting*, 14 Minn. 537; *Kinnier* v. *Kinnier*, 45 N. Y. 535.

Conceding that the question of Rachel Ellis' residence was a jurisdictional one, yet it belonged to that class of jurisdictional facts which the Wisconsin court had to determine from the evidence; and if the Court found this fact upon insufficient evidence, or without competent evidence, and thereupon proceeded to exercise jurisdiction, the action of the Court in this respect was not void, but merely erroneous, and was not subject to collateral at-

tack. *Waldo* v. *Waldo*, 52 Mich. 94; *Ellis* v. *White*, 61 Ia. 644; *Carlisle* v. *Carlisle*, 96 Mich. 128; *Elliott* v. *Wohlfrom*, 55 Cal. 384; *Arthur* v. *Israel*, 15 Colo. 147; *Simons* v. *Simons*, 47 Mich. 253.

If the appellants were unable to properly prove the contents of the will, proof of incapacity to revoke it would be unavailing. The appellants attempted to prove the contents of the will, but failed to do so. The testimony as to the contents of the will was of such a character that it is impossible to arrive at a determination of its provisions. *In re Russer*, 6 Demorest, 31; *Sheridan* v. *Houghton*, 6 Abbott, N. C. 234; *McNally* v. *Brown*, 5 Redf. 372; *Kidder's Estate*, 66 Cal. 487; *Todd* v. *Rank*, 13 Colo. 546.

There is no proof that the Probate Code was not properly enacted. This Court has effectually disposed of the objection that the Journal fails to show a suspension of the rules. *State* v. *Peterson*, 38 Minn. 143; *Supervisors* v. *People*, 25 Ill. 163.

GILFILLAN, C. J. Appeal from an order appointing an administratrix. Stating the history of the matters involved in chronological order, in 1869 Matthew Ellis and Rachel Cottrell, then residents in Wisconsin, intermarried in that state, and resided therein —the latter part of the time at Hudson—from the time of their marriage till October, 1883, when they came to St. Paul, Minnesota. February 29, 1884, she commenced by proper personal service of summons an action against him for divorce in the Circuit Court for the county of St. Croix, (in which Hudson is situated,) in said state. Her complaint was sworn to by her, and it alleged, among other things, that she then was, and for more than three years last past had been, a resident of said county and state, and that for more than a year prior to bringing the action the defendant had willfully deserted and refused to live and cohabit with her; and it demanded judgment dissolving the marriage, and requiring the defendant to pay her the sum of $8,000 alimony. The defendant filed an answer, not raising any substantial issues, and the parties made and filed a stipulation agreeing upon the alimony at $6,150 and a horse, carriage, robes, etc., and all the defendant's household goods, except his library. The answer and stipulation suggest an agreement between the parties for a divorce,—a sug-

gestion which ought to have caused the court, and we must assume that it did, to require strict and ample proofs of the facts showing a cause of action, and which would have been influential upon an application to vacate the judgment rendered on the ground of collusion and fraud upon the court. But that did not go to the jurisdiction of the court over the case. A reason for deciding against the plaintiff, or a fraud upon the court as to the judgment to be rendered, or the character of the motive that induced the bringing the action, does not affect the jurisdiction. March 27, 1884, judgment in that action was rendered, dissolving the marriage between the parties, and allowing the plaintiff therein the alimony stipulated; and that alimony was paid. September 2, 1886, Matthew Ellis and Flora Wilson intermarried, and they lived together as husband and wife until December 7, 1892, when he died in St. Paul, Ramsey county, in this state.

Flora Ellis, the second wife, filed a petition in the Probate Court of said county, stating the necessary jurisdictional facts, alleging that Matthew Ellis died intestate, and that she was his widow, and asking to be appointed his administratrix. On the day appointed for the hearing Rachel Ellis appeared, denied that Flora was the widow, alleged that she was the widow, and asked that she be appointed administratrix. At the same time appeared a brother and sister of deceased, representing that the deceased had made a will, still in force, and asking the court to make the proper order or decree in the premises. The Probate Court appointed Flora administratrix, and on an appeal to the District Court, in which the court heard all the parties, that court affirmed the decision of the Probate Court.

Before taking up the principal question in the case, the only one which seems to us of sufficient importance, as presented by the evidence, to call for consideration at any length, we will dispose of others of less importance. It is claimed by appellants that the act of 1889 known as the "Probate Code" was not passed in the house of representatives in the manner prescribed by the constitution, because it does not appear from the house journal that the bill was read on three different days, or that the rule was suspended, as required by the constitution. It is not clear to us what

the Probate Code has to do with the case, for the rule providing who shall be entitled to administration was the same under the prior law as under that act, and the evidence of a will offered was not sufficient to establish a will, not produced, either under the prior law or the Probate Code. Every bill signed and approved as required by the constitution is presumed to have been properly passed. And, as held in *State* v. *Peterson*, 38 Minn. 143, (36 N. W. 443,) the absence from the journal of either house of an entry showing that a particular thing was done, is no evidence that it was not done, unless the constitution requires the entry to be made; and there is no such requirement in respect to the reading of a bill on three different days, or its passage under a suspension of the rule. The objection, therefore, is not well taken.

Ellis executed two wills,—one in 1890, which he destroyed, with intent to revoke, in July, 1891, when he executed another. He destroyed that will, apparently with intent to revoke it, December 31, 1891. The appellants offered evidence tending to prove that at that date he had not sufficient mental capacity to make or revoke a will. On the respondent's objection this evidence was excluded, on the ground, as we understand, that it was immaterial, because there was not sufficient evidence of the will.

It must be apparent that, in order to defeat an application for the appointment of an administrator, proof of a will, not forthcoming, must be such as to show that it can be established. Proof that one was executed will not suffice without proof to a reasonable certainty of its contents. To establish a will without such proof would be to make a will for the party.

The evidence afforded no means of determining with any degree of certainty what disposition the will of July, 1891, made of the testator's property. The most that could be made of it was that it left to Flora Ellis one-third of the property, and something more, but how much or what more did not appear; that there were specific devises or legacies to others, but to whom, except one, or how much to any one of them, did not appear; and that there was a residuary devisee or legatee, but who, did not appear; and there were no means of determining how much would be the residue.

Of course, a will, not produced, could not be established on any

such evidence, and evidence that the testator had not capacity to revoke it would be immaterial.

That leaves only the question which of the two, Flora or Rachel, was the widow of Matthew Ellis? That depends on the validity of the judgment divorcing Rachel and Matthew.

It is objected that the judgment was not sufficiently proved, because—First, the authentication was not in conformity with the act of congress; second, the copy authenticated is a copy of the judgment roll, and it does not appear the judgment was ever entered in the judgment book.

When the proceedings of a court of another state are authenticated as provided by act of congress, they must be received as evidence; but it is competent for the legislature of each state to provide that proof of such proceedings may be received in the courts of such state by authentication less than is prescribed by act of congress, and the authentication in this case was in accordance with the statute of the state.

We will assume that the laws of Wisconsin are the same as our own in respect to entering judgments and making up the judgment rolls. The roll, or an authenticated copy of it, is evidence of all that is properly contained in it, including the judgment, and is evidence, *prima facie* at any rate, that the judgment was properly rendered and entered, so as to have effect.

It is objected to the judgment that by the laws of Wisconsin (which on this point were proved) the action for divorce is a local action,—that is, that it is properly triable in the county where the parties, or one of them, resides; that by the pleadings it appears that the only county in which either party resided was the county of St. Croix, but that the hearing in the action was had in the county of Eau Claire. And it is urged that in hearing the case the court acted without jurisdiction. We are not referred to any decision in that state as to the effect on the jurisdiction of a trial (by the same court) in one county when the statute provides that the trial ought to be in another. In this state it might be an irregularity, and, if objected to, error, but would not affect the jurisdiction of the court so as to render the judgment void. *Gill* v. *Bradley*, 21 Minn. 15; *Kipp* v. *Cook*, 46 Minn. 535, (49 N. W.

257;) *Tullis* v. *Brawley*, 3 Minn. 277, (Gil. 191.) And we assume that the rule is the same in Wisconsin.

The appellants offered, in order to impeach and avoid the judgment, to prove that Rachel Ellis was compelled to bring the action by the defendant's course of conduct towards her, which consisted in endeavoring to persuade her to bring the action; that during the period of two years he abandoned her at different times, at first for a week at a time, gradually lengthening the periods of absence until they became three months at a time, leaving her unprovided with the necessaries of life, and threatening, whenever he returned, that he would continue that course of conduct unless she consented to bring the action, and that unless she so consented he would run away, and leave her without a penny; and also to prove other acts of his of a similar character, all of which had such effect upon nerves and health and mental condition that she was not a free agent, in which condition she brought the action; from all which it is claimed she brought it under duress. Whether at any time, and especially whether after she has received and enjoyed the fruits of the action, and has acquiesced for years, until the defendant has married again, and has died, and there is left solely the matter of distributing his property, a woman plaintiff could, because of such facts, obtain any relief in the same action, we will not undertake to say. Certainly it would be no ground for assailing the judgment in a collateral proceeding at any time. In the majority of actions for divorce by wives on the ground of desertion or ill usage, the same claim of duress to bring the action might be made as in this case, and the stronger the grounds for divorce the stronger would be the ground to avoid the judgment whenever it might be convenient or profitable to do so. The court properly excluded the evidence.

The principal question in the case was presented by the appellants' offer to prove, and the ruling of the court excluding the evidence, that at the time of bringing the action in Wisconsin and of the divorce decree neither of the parties to it was a resident of that state, but that both were residents of this state. It is claimed for the evidence that, if admitted, it would have shown that the Wisconsin court had no jurisdiction of the subject-matter

of the action, to wit, the marital relation between the parties; that consequently the decree was void; Rachel remained the wife, and is now the widow, of Matthew; and that the marriage with Flora was void.

The question thus raised is of great importance, and difficult to satisfactorily determine. It is an undisputable general proposition that the tribunals of a country have no jurisdiction over a cause of divorce, wherever the offense may have occurred, if neither of the parties has an actual, *bona fide* domicile within its territory. This necessarily results from the right of every nation or state to determine the *status* of its own domiciled citizens or subjects without interference of foreign tribunals in a matter with which they have no concern. But when in the court of a state an action for divorce is brought, and a decree of divorce rendered, the court is presumed to have determined the facts essential to its jurisdiction, among them the residence of the parties.

When, as between whom, and to what extent is such determination binding in the state in which the parties are in fact residents? The cases in which the question may arise may be divided into three classes:

*First,* in proceedings between the State of the parties' actual residence and one of the parties;

*Second,* in proceedings between the parties in the state of their actual residence, where the divorce in the other state was procured on the application of one of them, the other not appearing in the action to procure it;

*Third,* in proceedings between the parties when both voluntarily appeared in the action in which the divorce was granted, and consented to the jurisdiction, or that the court might determine the facts on which the jurisdiction depended.

In the second class of cases it was settled that a judgment of another state can be assailed on the ground of want of jurisdiction in the court to render it, the decisions have been practically uniform that the party who did not submit to the jurisdiction is not bound by the judgment.

Of the decisions in cases coming under the first class we refer to four,—*Hood* v. *State,* 56 Ind. 263; *Van Fossen* v. *State,* 37 Ohio

St. 317; *People* v. *Dawell*, 25 Mich. 247; and *State* v. *Armington*, 25 Minn. 29,—all cases between the State of actual residence and one of the parties. In the first of these the record of the judgment showed that neither of the parties was a resident of Utah, where it was rendered, so that the record impeached itself. It was, of course, held that the judgment was void. In each of the others it was held that, in order to show want of jurisdiction in the court rendering the judgment, it might be shown that neither of the parties resided within the state in which it was rendered, and, that being shown, it was void. In the opinion in each case language is used apparently sustaining the proposition that such would be the rule however the question of the validity of the judgment might arise. In *People* v. *Dawell,* Mr. Justice Cooley delivered the prevailing opinion, Mr. Chief Justice Christiancy concurring, and Mr. Justice Campbell dissenting. It was enough for the purpose of that case to decide whether the judgment was valid as against the State of residence. Whether it was valid as between the parties was not before the court; and such was the case in *Hood* v. *State* and *State* v. *Armington.* So far as the State of residence is concerned, it must be taken upon the authorities, and certainly in this State, upon the *Armington* Case, that it is not bound by a judgment divorcing two of its resident citizens, rendered by a court of another state. There are reasons why it should not be bound, however it may be between the parties which we will presently refer to.

It does not follow that the judgment is void in the third class of cases. A judgment operating on a *res* may be binding between the parties to the action without binding one not a party, but interested in the *res.* In an action for divorce the *res* upon which the judgment operates is the *status* of the parties. There are three parties interested in that,—the husband, the wife, and the State of their residence. This was in the mind of Mr. Justice Cooley in writing the opinion in the *Dawell* Case. He said: "But it is said if the parties appear in the case the question of jurisdiction is precluded. That might be so if the matter of divorce was one of private concern exclusively." "As the laws now are, there are three parties to every divorce proceeding,—the husband,

the wife, and the State; the first two parties representing their respective interests as individuals; the state concerned to guard the morals of its citizens, by taking care that neither by collusion nor otherwise shall divorce be allowed under such circumstances as to reduce marriage to a mere temporary arrangement of conscience or passion." "Such being the case, suppose we admit that the parties may be bound by their voluntary appearance in the foreign jurisdiction. How does that affect the present case? How, and in what manner, did the Indiana court obtain jurisdiction of the third party entitled to be heard in this proceeding; that is to say, of the State of Michigan?" This line of reasoning was applied by the same court in *Waldo* v. *Waldo*, 52 Mich. 94, (17 N. W. 710.) One question in that case was whether the plaintiff was the widow of Jerome B. Waldo, just as in this it is whether Flora Ellis is the widow of Matthew. Previous to her marriage to Jerome B. she had been married to one Carey, from whom she had obtained a divorce in Indiana, both parties appearing in the action for it. The court held the judgment could not be assailed by showing want of residence in Indiana and residence in Michigan, saying in one part of the opinion: "This State has never complained of that judgment, and neither party has objected to it." The *Dawell* Case was not referred to, and we may from both cases take the rule in that State to be that, while the State cannot be bound by its resident citizens appearing in and consenting to the jurisdiction of a court in another State in an action for divorce, the parties may so bind themselves in respect to their individual interests. In *Kinnier* v. *Kinnier*, 45 N. Y. 535, a private action, it was held that a judgment of divorce by the court of another State, both parties appearing in the action, could not be assailed on the question of residence. In the course of the opinion the court, Church, C. J., said: "Nor can I assent to the reason given for allowing the husband to repudiate the binding force of the judgment upon him, after voluntarily submitting himself to the jurisdiction of the court, and litigating the case upon its merits;" thus recognizing the effect of the voluntary submission upon the parties' right to question the judgment. Cases in Massachusetts, to which we are cited by appellants, are hardly of authority on the point, because

the decisions were based mainly on a statute of that State. *Ellis* v. *White*, 61 Iowa, 644, (17 N. W. 28,) has only bearing on one phase of this case. It was there held that a plaintiff in an action for divorce and alimony cannot question the jurisdiction of the court after accepting the benefits of the judgment.

It may seem anomalous that a judgment of divorce can be so far effectual between the parties as to extinguish all rights of property dependent on the marriage relation, without being effectual to protect them from accountability to the State for their subsequent acts. One reason why they ought not to be permitted, by going into another State and procuring a divorce, to escape accountability to the laws of their State, is that their act is a fraud upon the State, and an attempt to evade its laws, to which it in no wise consents, and it may therefore complain. But the parties do consent, and' why should they be heard to complain of the consequences to them of what they have done? Why should they be permitted to escape those consequences by saying: "It is true that by false oath made by one of us, and connived at by the other, we committed a fraud in the Wisconsin court, and induced it to take cognizance of the case; but now we ask to avoid its judgment by proof of our fraud and perjury or subornation of perjury." Because we do not think it can be done the parties must, so far as their individual interests are concerned, abide by the judgment they procured that court to render; and, of course, what will bind them will bind those who claim through them, or either of them, which is the case with the appellants other than Rachel.

There were other minor questions raised by the assignments of error, but we do not see any merit in any of them.

Order affirmed.

(Opinion published 56 N. W. Rep. 1056.)