LAURA J. BLEDSOE V. ETTA L. SEAMAN, *also known as* ETTA S. BLEDSOE.

No. 15,475.  (95 Pac. 576.)

SYLLABUS BY THE COURT.

1. DIVORCE—*Jurisdiction—Impeachment of the Decree.* When both parties. to a suit for divorce appear in the court of another state and submit to its jurisdiction, and after trial on the merits a decree is obtained, the party in whose favor the decree is granted will not be permitted, in an action subsequently commenced in this state, to impeach such decree on the ground that at the time the suit was commenced and the decree entered neither party resided in that state but both were residents of this state.

2. ——— *Residence of Parties—Estoppel to Deny Jurisdiction.* The plaintiff and her husband resided in Kansas. The husband went to South Dakota for the purpose of obtaining a divorce. He commenced a suit there for that purpose; plaintiff was notified and filed an answer and cross-petition, in which she prayed for a divorce, alimony, and the exclusive custody and control of their daughter, then eight years of age. She obtained a decree as prayed for. Seven years afterward she commenced an action in Kansas against the defendant for alienating the affections of her husband. In her petition she alleged her marriage, and also the decree of divorce, but averred that the South Dakota court was without jurisdiction for the want of the required residence of the parties in that state. The defendant answered by pleading the South Dakota judgment and averring its regularity and legality. Plaintiff, by reply, admitted the judgment but denied its validity, for the reasons stated in the petition. The court gave judgment for the defendant upon the pleadings. *Held*, not error.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed April 11, 1908. Affirmed.

STATEMENT.

THIS action was commenced in the district court of Shawnee county by Laura J. Bledsoe to recover damages suffered on account of the alienation of the affection of her husband, A. Scott Bledsoe, by the defendant, Etta L. Seaman. The defendant moved for judgment in

her favor on the pleadings, which motion was allowed and judgment entered accordingly. The plaintiff seeks to reverse that judgment. It will be unnecessary to a clear understanding of the points decided to set out the pleadings in full. The material facts of the petition are substantially as follow:

"Comes now said plaintiff and for her amended petition herein against said defendant says:

"That heretofore, to wit, on the 22d day of May, 1889, at the city of Stockton, state of Kansas, this plaintiff, Laura J. Bledsoe, and A. Scott Bledsoe were intermarried, and as the fruits of said marriage there is now living, of the issue of said marriage, one child, a girl named Nellie, now fourteen years of age.

"That from the time of said marriage until the summer of 1896 said A. Scott Bledsoe conducted himself toward said plaintiff as a loving and true husband, and said plaintiff lived happily with him; that said A. Scott Bledsoe was a minister of the gospel and a pastor of the Christian church, in good standing; that said plaintiff and A. Scott Bledsoe had together, by their mutual efforts, accumulated a fair amount of property, of the value of at least two thousand dollars, and had continued to be prosperous and happy in each other's love and affection.

"That in 1896 said A. Scott Bledsoe was pastor of the Christian church at Clay Center, Kan., and also at Dennison, Kan., preaching on alternate Sundays at each place; that in April, 1896, on a return trip from Dennison, he met at the station at Topeka the said defendant, Etta L. Seaman, who claimed to be an inspired spiritualist lecturer. . . . She was at that time a married woman, her husband being an aged man residing at Concordia, Kan. . . . For the express purpose of injuring said plaintiff, and enticing and procuring the said A. Scott Bledsoe, her husband, to become alienated in feeling and affection for and to abandon said plaintiff as his wife, and to deprive her of the society, comfort, aid and assistance of her said husband, . . . said defendant . . . urged upon him the doctrine of free love and procured him to visit her . . . and eloped with him and lived with him in criminal adultery in Arkansas, South Dakota, Iowa, Nebraska, and Kansas, and conspired with him to violate his duty as a husband and to commit adultery with her . . . and at

and during said times . . . conspired with him to fraudulently simulate a domicil in South Dakota, and to swear to and file a petition for divorce from this plaintiff, and in pursuance of her purpose to alienate his affection from this plaintiff, and in pursuance of said conspiracy said defendant and said A. Scott Bledsoe went to South Dakota for the sole purpose of enabling him to obtain a divorce from this plaintiff; that said A. Scott Bledsoe had no other business there than the prosecution of said divorce suit; that this plaintiff and A. Scott Bledsoe had never lived together as husband and wife in said South Dakota, and said A. Scott Bledsoe was never in said state except as herein stated; that this plaintiff was never a resident of said state of South Dakota, and was never actually in said state; and that said A. Scott Bledsoe never was or became a *bona fide* resident of said state, and was never domiciled therein; that he was actually in said state less than six months prior to the commencement of his said action for a divorce, and that he had left said state permanently prior to the commencement of said action, and has never returned there except temporarily to attend the trial of his said action for divorce, and that all the time he was in the state prior to the commencement of said action he was living in pursuance of the purpose and conspiracy of this defendant aforesaid, with said defendant in criminal adultery and in violation of law and decency.

"That by the law of the state of South Dakota the courts of that state had no jurisdiction to entertain a petition or render a divorce unless the plaintiff was and had been for at least six months prior to the date of the filing the petition for the same a *bona fide* resident of said state and domiciled therein in good faith, and the courts of said state had no jurisdiction of the subject-matter of said action, and the decree of divorce rendered therein was and is entirely without jurisdiction and void, and, notwithstanding said proceeding and decree, said A. Scott Bledsoe remained and still remains the husband of this plaintiff.

"That since leaving South Dakota said defendant, continuing in her said purpose and said unlawful and wrongful conspiracies, has lived with him in criminal adultery in the states of Iowa, Nebraska, and Kansas, and still continues to so live with him in adultery. . . . in the city of Topeka, Kan., without the privity

or consent of this plaintiff; that said defendant has been absent from the state of Kansas during all of said period and until less than two years prior to the commencement of this action.

"That by reason of the premises the plaintiff has been deprived of the comfort, society, aid and assistance which she otherwise would have had from the said A. Scott Bledsoe, and has suffered great distress of body and mind, to her damage in the sum of $20,000. Wherefore, plaintiff prays," etc.

To this petition the defendant filed an answer containing, first, a general denial, and, second, the following facts:

"That on or about March 7, 1898, A. Scott Bledsoe, the former husband of said plaintiff, commenced an action against Laura J. Bledsoe, the above-named plaintiff, in the circuit court in and for Davison county, in the state of South Dakota, a court of competent jurisdiction, wherein said A. Scott Bledsoe, as plaintiff, prayed for a divorce from said Laura J. Bledsoe, as defendant in said action, and plaintiff herein; that said Laura J. Bledsoe, as defendant in said action wherein A. Scott Bledsoe was plaintiff, employed counsel and on or about April 30, 1898, filed an amended answer in said action against her praying for a divorce on her part from said A. Scott Bledsoe, plaintiff in said action; that said action was duly tried in said court in Davison county, on May 28, 1898, and was by the court decided in favor of said Laura J. Bledsoe, defendant in said action, and a decree of divorce and a judgment for alimony was duly and legally granted to said Laura J. Bledsoe on the —— day of June, 1898, which judgment and decree is in words and figures as follow: ,

" 'This action having been brought to trial by the court and a decision therein having been rendered for the defendant and filed, now on motion of Winsor & Mohr, the defendant's counsel, it is adjudged that the marriage between the plaintiff, A. Bledsoe, and the defendant, Laura J. Bledsoe, be dissolved, and the same is hereby dissolved accordingly, and the said parties are and each of them is freed from the obligations thereof.

" 'And it is further adjudged that the charge, control and custody of Nellie Bledsoe, aged eight years, and the only issue of said marriage, is hereby awarded to the defendant, Laura J. Bledsoe, and that the plaintiff, A. Bledsoe, pay into the hands of the clerk of this court, on the first day of July, 1898, and on the first day of each and every month thereafter, up to and including the first day of January, 1911, when she shall become of age, the

sum of twenty-five dollars for the support, maintenance and education of the said Nellie Bledsoe, and for the support of the defendant, her mother, and that such sums be .promptly transmitted by the clerk to the defendant at her post-office address at Emporia, Kan., by post-office money order or draft from bank of this city on a responsible bank in Chicago, Ill.

"'And it is further adjudged that it shall be lawful for the defendant, Laura J. Bledsoe, to marry again in the same manner as if the plaintiff, A. Bledsoe, were actually dead, but that it shall not be lawful for the plaintiff, A. Bledsoe, to marry again until the defendant, Laura J. Bledsoe, is actually dead.

"'Adjudged that the defendant recover of the plaintiff ——— dollars and ——— cents, her costs in this action, to be taxed by the clerk.   .

"'Done in open court at the city of Mitchell, this ——— day of June, 1898.'

"That said proceedings, decree and judgment have not been reversed nor appealed from and are in full force and effect, and have at all times been recognized as valid and binding by said Laura J. Bledsoe, defendant in said action and plaintiff herein, as is shown by the fact that on July 16, 1904, the plaintiff herein commenced an action, No. 22,857, in this court to enforce the collection of the judgment for alimony rendered in her favor against said A. Scott Bledsoe in said divorce proceedings, which action is still pending and undetermined in this court, and to which reference is hereby made."

As a third defense the defendant pleaded the two-year statute of limitation.

To this answer the plaintiff filed a. reply, which reads:

"Comes now said plaintiff and for her reply to the answer of defendant herein said plaintiff says that the decree of divorce referred to and set out in said answer is the same decree of divorce referred to and alleged to be void in the amended petition of the plaintiff herein, and in the petition of this plaintiff against A. Scott Bledsoe and this defendant, No. 22,857 in this court, referred to in the answer herein, a copy of which petition in said other action is attached to and made a part of the demurrer of this plaintiff to the answer herein, and the same is here referred to as a part of this reply, and this plaintiff further says that she has never recognized the same as legal or binding in said other action or otherwise."

On motion the words "a copy of which petition in said

other action is attached to and made a part of the de-
murrer of this plaintiff to the answer herein," were
stricken out, and then the defendant moved for judg-
ment on the pleadings, which motion was allowed. The
plaintiff prosecutes error.

*Edwin A. Austin,* and *Otis E. Hungate,* for plaintiff
in error.

*W. A. S. Bird,* and *George E. Overmyer,* for defend-
ant in error.

The opinion of the court was delivered by

GRAVES, J.: The principal part of the argument pre-
sented in this case is confined to a discussion concern-
ing the jurisdiction of the circuit court in South Da-
kota, where the plaintiff obtained a divorce from her
husband. This subject is fully discussed and many
authorities are cited by each party. In the view we
have taken, however, this question is not controlling.

The complaint made by the plaintiff is that the dis-
trict court erroneously entered judgment in favor of
the defendant upon the pleadings. This question must
be determined from the facts alleged. The averments
of these pleadings show in substance that A. Scott Bled-
soe commenced an action in the state of South Dakota
to obtain a divorce from his then wife, the plaintiff in
this action. In that action she appeared and filed an
answer and cross-petition, in which she asked for a
divorce, for the custody of their infant child, and for
alimony. The prayer of the cross-petition was granted,
and she obtained the decree requested. This decree was
entered in 1898, more than seven years before she com-
menced this action in Shawnee county. She has re-
tained the exclusive possession and control of the child
during that time. The judgment for alimony still
stands in her favor. A party cannot invoke the juris-
diction and power of a court for the purpose of securing
important rights from his adversary through its judg-
ment and, after having obtained the relief desired, re-

Bledsoe v. Seaman.

pudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction, either of the subject-matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated. People who invoke the action of a court, and, through negligence or falsehood, mislead the court as to the existence of the facts upon which its jurisdiction depends, and obtain a judgment for relief, will not afterward be heard to deny the validity of such judgment. (16 Cyc. 795-800; *Ogden v. Stokes,* 25 Kan. 517.)

This rule has been frequently applied to actions for divorce where the decree was obtained in one state and afterward attacked in another. In the case of *In re Ellis' Estate,* 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. Rep. 514, it was held that "where, in an action in the court of another state for divorce, both parties voluntarily appear, and submit to the jurisdiction, they are bound by the judgment, and cannot avoid it in a collateral proceeding in this state by proof that when the action was brought and judgment rendered neither of them was a resident in that state, and that both were residents in this state." (Syllabus.) The facts of that case show that Matthew Ellis died intestate. Eight years before that his wife, at his request, obtained a divorce from him in the state of Wisconsin, and he subsequently married and left as his widow Flora Ellis. The two women contested for his estate, each claiming to be his lawful widow. The first wife contended that the Wisconsin divorce obtained by her was void, for the reason that she was not a resident of that state at that time and therefore the court did not have jurisdiction. This contention was denied. In the opinion the court said:

"It may seem anomalous that a judgment of divorce can be so far effectual between the parties as to extinguish all rights of property dependent on the mar-

riage relation without being effectual to protect them from accountability to the state for their subsequent acts. One reason why they ought not to be permitted, by going into another state and procuring a divorce, to escape accountability to the laws of their state, is that their act is a fraud upon the state, and an attempt to evade its laws, to which it in no wise consents, and it may therefore complain. But the parties do consent, and why should they be heard to complain of the consequences to them of what they have done? Why should they be permitted to escape those consequences by saying: 'It is true that by false oath made by one of us, and connived at by the other, we committed a fraud in the Wisconsin court, and induced it to take cognizance of the case; but now we ask to avoid its judgment by proof of our fraud and perjury or subornation of perjury.' Because we do not think it can be done the parties must, so far as their individual interests are concerned, abide by the judgment they procured that court to render." (Page 413.)

This case resembles the one just quoted from quite closely. Bledsoe left Kansas and went to South Dakota to obtain a divorce. His wife followed. In his petition he pleaded residence as required by the law of that state. The wife filed a cross-petition in which she alleged "that for more than three months before the commencement of this action the plaintiff has been and now is a resident of the state of South Dakota." Apparently the only reason for this allegation was a desire to leave the question of jurisdiction unchallenged. As an affirmative allegation of residence it was perhaps insufficient, but it might be construed as an admission of the plaintiff's averment of that fact.

In the case of *Starbuck v. Starbuck*, 173 N. Y. 503, 66 N. E. 195, 93 Am. St. Rep. 631, it was held that "a party cannot . . . be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor." (Page 508.) In that action there was a controversy between two women, both claiming to be the widow of the deceased, and, therefore, entitled to a part of his estate. One of them left the de-

ceased, who resided in the state of New York, and went to Massachusetts, where she obtained a divorce from her husband, who did not appear in the action. After the decree she remained in the state of Massachusetts. Her divorced husband subsequently married again. It was claimed that the Massachusetts divorce was void for the reason that the court did not have jurisdiction. The objection was overruled and the decree sustained. In the case of *Waldo v. Waldo*, 52 Mich. 94, 17 N. W. 710, it was held that "an Indiana divorce cannot be impeached in a purely collateral civil action in Michigan by seeking to show that the residence of the complainant in the divorce suit was not such as to give the Indiana court jurisdiction." (Syllabus. See, also, *Matter of Morrisson*, 59 N. Y. Supr. Ct. 102, 5 N. Y. Supp. 90; *Matter of Swales*, 60 N. Y. Supr. Ct., App. Div., 599, 172 N. Y. 651, 65 N. E. 1122.) The following cases, while not directly in point, are of the same general effect: *Richardson's Estate*, 132 Pa. St. 292, 19 Atl. 82; *Kinnier v. Kinnier*, 45 N. Y. 535, 6 Am. Rep. 132; *Kirrigan v. Kirrigan*, 15 N. J. Eq. 146; *Ellis v. White et al.*, 61 Iowa, 644, 17 N. W. 28.

While the rule applied in this case does not rest upon the doctrine of estoppel, as that term is ordinarily understood, yet there are some facts present which indicate that an ordinary estoppel might be applied. The plaintiff complains of the defendant for having alienated the affections of her husband. Her right to recover for the acts complained of, which occurred before the divorce was granted, has been long since barred by the statute of limitations. When the plaintiff procured the divorce the defendant, having knowledge thereof, had a right to assume that the plaintiff no longer had or claimed any rights to the affections or society of her former husband, A. Scott Bledsoe, and that any relations which she might assume with him thereafter would not in any way infringe upon the rights of the plaintiff. The conduct of the plaintiff in this respect is almost tantamount to an express withdrawal of ob-

jection to the illicit relations existing between the defendant and the plaintiff's husband at the time of the divorce. But for the decree these relations might have ceased; by it they were probably encouraged.

We conclude that the plaintiff should not be permitted to impeach the South Dakota decree. This conclusion disposes of all the other questions in the case and they need not be considered. The judgment of the district court is affirmed.