## HENRY WIEMER v. ALLIE D. WIEMER.

(130 N. W. 1015.)

**Practice — Divorce — Vacating Judgment.**

1. The remedy of a party aggrieved by a decree of divorce, if the evidence is insufficient to sustain such decree, is not ordinarily a motion to vacate, but by appeal.

**Divorce — Collusion.**

2. "Collusion is an agreement between the husband and wife that one of them shall commit, or appear to have committed, or be represented in court as having committed, acts constituting a cause of divorce, for the purpose of enabling the other to obtain a divorce." (§ 4058, Rev. Codes 1905.) The

evidence in this case failing to show any agreement between the husband and wife, that one of them should commit, or appear to have committed, acts constituting a cause for divorce, and it not appearing that the defendant was represented as having committed acts for such purposes which she had not committed, no collusion is shown.

### Divorce — Collusion.

3. The representation referred to, in order to constitute collusion, must be a misrepresentation.

### Divorce — Vacating Judgment — Motion of Applicant.

4. In applications to vacate a decree of divorce entered against the applicant under the circumstances of this case, it must appear that she is acting with good motives, and not for an increase of advantage to her.

Opinion filed April 1, 1911.

Appeal from District Court, Burleigh county; *Winchester,* J.

Action by Henry Wiemer against Allie D. Wiemer. From an order denying a motion to vacate a decree of divorce rendered in the case, defendant appeals.

Affirmed.

*Engerud, Holt, & Frame,* for appellant.

A judgment fraudulently obtained will be set aside. 1 Black, Judgm. 320; Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095; Haverty v. Haverty, 35 Kan. 438, 11 Pac. 364; Crouch v. Crouch, 30 Wis. 667; True v. True, 6 Minn. 458, Gil. 315; Young v. Young, 17 Minn. 181, Gil. 153; Colby v. Colby, 59 Minn. 432, 50 Am. St. Rep. 420, 61 N. W. 460; Daniels v. Benedict, 50 Fed. 351.

A judgment of divorce collusively obtained will be set aside. Rev. Codes, §§ 4056, 4058; True v. True, 6 Minn. 458, Gil. 315; Mulkey v. Mulkey, 100 Cal. 91, 34 Pac. 621; Danforth v. Danforth, 105 Ill. 603; Singer v. Singer, 41 Barb. 139.

*Stevens & Berndt,* for respondent.

A judgment will not be vacated on mere suspicion of fraud, but there must be clear and strong evidence. 23 Cyc. Law & Proc. p. 920, and note 69.

SPALDING, J. "This is an appeal by the defendant from an order of the district court of Burleigh county, denying defendant's motion

to vacate the decree of divorce in said action. The motion was based upon the ground that it was fraudulently and collusively procured.

Plaintiff and defendant were married in Illinois in August, 1905. At the time of such marriage she was a widow, with a daughter about ten years old. This daughter was formally adopted by the plaintiff after such marriage with defendant. They resided in Illinois until the early part of 1905, when they moved to land owned by the plain-. tiff in Kidder county, North Dakota. In July, 1906, the defendant went to Montana, and remained there until fall, when she returned to Peoria, Illinois, her former home. In July, 1907, plaintiff brought this action for divorce on the alleged ground of desertion. The defendant answered, and the suit came to trial October 31, 1907, at Bismark. Plaintiff submitted his case in chief, and the defendant herself testified on the defense, when counsel for plaintiff requested a continuance of the case for sixty days to permit the taking of further testimony. The evidence as to what transpired subsequent to this request for adjournment is in sharp conflict. The appellant submits a long affidavit containing her version, which, if true, shows that she was alarmed lest the respondent obtain the custody of her daughter, and that, on the representations of her counsel that plaintiff might and probably would succeed in obtaining such custody, she refrained from submitting further evidence, and made a settlement with her husband, accepting $2,000 denominated in the judgment, "alimony, and for the maintenance of the daughter," and that the court thereupon entered its decree whereby a divorce was granted to the respondent. She affirms that, except for her fear of losing the custody of her daughter, and misrepresentations by her counsel, and lack of knowledge of law on her part, she would not have abandoned her defense. Her affidavit is to some extent corroborated by the affidavit of the child.

Her counsel was Joseph W. Walker, of Steele, who is a reputable officer of this court, and his affidavit is submitted, and in many respects it is in direct conflict with the statements of the appellant, and explains, in an apparently frank and reasonable manner, the transactions which occurred, and which led to her abandonment of any defense. It is unnecessary to set forth in detail the contents of these affidavits.

It is elementary that fraud must be clearly proven, and we think the district court was justified in finding, on the application to vacate the decree, at least that the charges of fraud were not sustained with that

degree of clearness necessary to warrant the vacation of a solemn decree of that court entered in an action for a divorce. It appears that a motion for a new trial was made and denied, and no appeal taken from the order denying it; neither was an appeal taken from the judgment; and it is contended that the facts disclosed by the evidence before us and the affidavits of the parties establish collusion, and that the decree should have been vacated on this ground.

The last appearance of the appellant in the district court was in opposition to the granting of the decree. Before the court again convened she changed her mind. The record contains no evidence or claim that she had any interview with the respondent or his attorney. The affidavit of Walker recites that appellant asked him if he believed the court really would grant the continuance; that he informed her that in cases of this kind courts generally desired to be informed of the facts to the utmost extent, and that they probably would not be in position to successfully resist such a motion upon a showing by plaintiff of the materiality of the testimony that he expected to obtain from absent witnesses; that the defendant then told him that all the witnesses named were bitter enemies of hers, who would, by their testimony, directly contradict her own most material testimony, and that she herself could not procure more than one witness to support her side of the case, and that she could not depend upon the testimony even of that one as being of much assistance; that he then advised her that up to the time of the respondent's notice of his proposed motion, he had felt sanguine of preventing the plaintiff from winning in the case, but that, in view of defendant's inability to procure evidence in support of her own testimony, and in view of such an array of witnesses who would contradict her, it appeared, then, as though it would be next to impossible to prevent plaintiff from getting his decree; that thereupon appellant replied to him that it looked as though she might be thrown out without means of support; that she was tired of the fight; and that subsequently, and in the evening of November 1, 1907, the attorney for plaintiff had a conference with him with reference to the witnesses whose testimony was to be secured, and that at such conference he asked such attorney whether it would not be possible to so adjust matters that plaintiff would dismiss this suit, and defendant a similar suit which she had pending in Illinois, and that a discussion between them was then had regarding the amount of alimony that might be ultimately agreed upon in such case and in the

event of a decree for the plaintiff, and that it was finally agreed that $2,000 might be considered by both parties to said action. Walker testifies that he then called upon the defendant at her room, and informed her fully and truly as to his interview with the opposing counsel, whereupon she expressed herself as highly pleased thereat, and directed him to drop the fight provided she would be paid $2,000 alimony and given the custody of the daughter; that the next morning she saw him and requested him to see the opposing counsel, and that she stated that she wanted to settle the suit at once. He relates other facts not material to this proceeding, tending to show that he fully and honestly informed her at all times regarding the different steps in the proceedings, and that she did not further appear on the trial, and that she was paid the $2,000 by the respondent, but subsequently loaned him $1,000 thereof, taking security therefor.

The affidavit of Walker also sets forth certain correspondence passing between him and the appellant during the months of November and December, 1907, and January, 1908, indicating her satisfaction with his conduct of the case and with the result, suggesting, however, in one letter, that she contemplated taking further proceedings, contrary to the advice of her Illinois attorney, and that she thought she did not get as much as she ought to have received from the respondent.

It appears that after the decree was entered, certain exhibits were destroyed by agreement, and we are not advised definitely as to their nature. Aside from them the evidence submitted, and on which the decree rests, is before us. If it is insufficient in law to sustain the decree, appellant's remedy is not ordinarily by motion to vacate the decree, but by appeal. We, however, suppose it is here for the purpose of supporting the claim of collusion, on the theory that it does not disclose a cause of action in favor of the respondent. Prima facie it does not do so, but, when taken in connection with what appears in the proceedings in an action that she had brought in Illinois for a divorce, and which would go largely to the intent of the appellant when she left Kidder county for Montana, as to returning to or deserting the respondent, the trial court may have been warranted in making its findings on which the decree rests. However this may be, the evidence of collusion is not so convincing that we feel justified in reversing the order of the district court.

Usually the fact of an agreement not to make a defense is only evidence tending to show collusion, and is not collusion, and whether col-

lusion does exist must usually be determined by a consideration of such agreement and the other facts and circumstances surrounding it. In the case at bar we cannot say that an agreement was made that a decree should be entered irrespective of the law and the facts; neither can we say that the court was misled by representations in court that the appellant had committed acts constituting a cause of divorce, for the purpose of enabling the respondent to obtain a divorce. Section 4058, Rev. Codes 1905, defines collusion as "an agreement between the husband and wife that one of them shall commit, or appear to have committed, or be represented in court as having committed, acts constituting a cause of divorce, for the purpose of enabling the other to obtain a divorce." There is no claim that it was agreed between the appellant and respondent that the appellant should commit, or appear to have committed, an act constituting a cause for divorce. The evidence submitted to the court on which the decree was entered must be accepted as stating the facts regarding their separation. The representation of such acts as having been committed, when made to the court, must, to constitute collusion, be a misrepresentation, that is, an agreement to misrepresent the facts, or, more clearly, misrepresentation in court by agreement, which makes it appear that acts constituting a cause for divorce have been committed by the defendant when such acts have not been committed. In the case at bar the court may have been mistaken in the legal effect of the acts which were shown. If we assume that the evidence did not disclose a cause for divorce, he must have been so mistaken. But the evidence was before him, and it is not disclosed in the present proceeding that it was untrue, or that it was made by any agreement of the parties. In fact, the contrary appears. The agreement, if it can be termed an agreement, related wholly to property rights, and the obligations of the respondent toward the adopted daughter. Burgess v. Burgess, 17 S. D. 44, 95 N. W. 279. See also Karren v. Karren, 60 L.R.A. 294, and note (25 Utah, 87, 95 Am. St. Rep. 815, 69 Pac. 465).

In addition to the reasons above stated, from a consideration of all the evidence submitted on the motion to vacate the decree, it is clear to us that the appellant, in making such motion, was not actuated by proper motives or proceeding in good faith. It is perfectly clear that at the time the decree was entered, and for some days thereafter, even after consulting with her Illinois attorney, she was eminently satisfied with the outcome of the suit, but that, on consulting with another attor-

ney in Illinois, she concluded she had not received as much property in the settlement as she should have obtained. She so states in a letter to Walker, and we are convinced that therein lies the secret of this application and of her motive in making it. It was for her to make it appear that she was acting with good motives, and not from any increase of advantage that she hoped or expected to gain thereby. Singer v. Singer, 41 Barb. 139. She did not return the $2,000 to the respondent, but it was tendered into court. It is not beyond her recall, even in case the order appealed from should be reversed, and this is an important fact.

The order is affirmed.

All concur, except, MORGAN, Ch. J., not participating.