No. 22,729.

MARY A. RHODES (CHARLES S. TODD, as Administrator of the Estate of MARY A. RHODES, Deceased, *Appellee,*) v. R. O. RHODES, *Appellant.*

### SYLLABUS BY THE COURT.

1. DIVORCE — *Attorney Acting for Both Husband and Wife — Case Dismissed—Authority of Attorney to Consent to Reinstatement.* Where a husband employs an attorney to represent him in negotiations and litigation relative to a divorce, with instructions to take such steps as may seem desirable to bring about an action by the wife and a judgment for divorce, and the attorney with the full knowledge and consent of each party undertakes to represent both of them, signing the petition as attorney for the plaintiff, his authority to act for the husband does not cease upon a judgment of dismissal for want of prosecution brought about by his illness; and he is still authorized to consent in behalf of the husband to a reinstatement of the case at a subsequent term of court, unless a disability results from the dual representation.

2. SAME—*Collusion—Action to Set Aside Decree—Estoppel.* A husband who employs an attorney to foster the bringing of an action for divorce by his wife, and to represent him as well as her in such litigation, with instructions to do whatever is necessary to bring about a judgment for divorce, cannot be heard after the rendition of such judgment to attack its validity on the ground that public policy forbids an attorney to represent both parties to a divorce action.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed December 11, 1920. Affirmed.

Rhodes v. Rhodes.

*Z. T. Hazen* and *J. J. Schenck,* both of Topeka, for the appellant.

*D. H. Branaman,* and *W. E. Atchison,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.:   On March 14, 1918, Mary A. Rhodes brought an action for divorce against R. O. Rhodes, who waived the issuance and service of summons and entered a voluntary appearance, signing a writing to that effect which included an agreement that the case might be taken up and·tried at any time without further notice to him.   On March 31, 1919, the case was called for trial, and no response being made it was dismissed for want of prosecution.   On April 10, 1919, at a new term of court the order of dismissal was set aside and upon a. trial the plaintiff was granted a divorce.   She died on June 15,. 1919. . On July 20, 1919, the defendant moved to set aside the judgment on the ground that he had had no notice of the proceedings subsequent to the dismissal.   The motion was resisted by the administrator of the plaintiff's estate and was denied,. the present appeal being taken from that ruling.

In view of the evidence and the findings of the trial court the following facts must be regarded as established:  About February 1, 1918, the defendant, a resident of Kansas City, Mo., came to an attorney of Topeka and asked him to represent both parties in procuring a divorce, saying that he had no grounds for bringing such an action himself and desired one to be brought by his wife, who lived there and who had abundant basis therefor.  An arrangement was then made, to which the plaintiff later became a party, that such an action was to be brought by the attorney, who was to appear upon the records as her attorney, while in reality representing the defendant as well, being authorized by him to do whatever might be necessary in order to obtain the divorce. A property settlement and the payment of alimony was agreed upon and the action was brought.  Several continuances were had because of the defendant being unable to pay off a real-estate mortgage which by agreement he was to satisfy.  The order of dismissal grew ·out of the fact that the plaintiff and the attorney were both sick at the time the case was reached, and neither had notice of

its having been set for trial. As soon as the attorney learned of the dismissal he applied for a reinstatement in behalf of both parties, advising the court of the facts substantially as here stated.

1. The order setting aside the dismissal, having been made at a subsequent term of court, depends for its validity upon the consent of the parties. The defendant asserts that even leaving out of account any question of dual representation and assuming the situation to be the same as though he had been represented by a separate attorney, his attorney could not give an effective consent in his behalf because his authority necessarily ceased with the judgment of dismissal. Language tending to support that view is used in *Wawrzyniakowski v. Hoffman & Billings Mfg. Co.*, 137 Wis. 629, but we cannot accept it as the expression of a general rule applicable to the facts of this case. Doubtless, the presumption is that an attorney is employed to conduct litigation to judgment and no further, and an order dismissing an action may often bring the employment to an end. (6 C. J. 672-673; 3 A. & E. Encycl. of L., 2d ed., 329.) But there can be no hard and fast rule on the subject. Much must necessarily depend upon the particular circumstances and the character of the employment. (For an illustration see *Macpherson v. Bacon's Executor*, 180 Ky. 773, 785.) If an attorney is employed to endeavor to attain a certain result, and through some accident or inadvertence, or even through neglect or oversight on his part, an order is made dismissing an action brought by him for the purpose, it cannot be that a new employment is necessary to authorize him to ask for its reinstatement. And if the client is a defendant who has employed counsel to represent him for the purpose of having an affirmative judgment rendered, the situation is not essentially different. If the defendant in the present case had employed some other attorney to represent him in negotiations and litigation with regard to a divorce, instructing him to do whatever he deemed advisable to bring about the granting of the divorce and a division of property it would scarcely be contended that such attorney could not bind his client by a consent to the reinstatement of the case after its dismissal as readily as by an original entry of appearance. Here the waiver of summons was embodied in a writing signed by the defendant in person, but would of course have been equally effective if made

Rhodes v. Rhodes.

by a properly authorized attorney. Whether or not the fact
that an attorney represented the plaintiff in a divorce action
would prevent his making a valid entry of appearance for the
defendant is not a question which affects the particular feature
of the case we are now discussing. We entertain no doubt that
the court had jurisdiction to set aside the order of dismissal
upon the consent of the attorney representing the defendant,
unless such result was prevented by the fact that the same at-
torney was representing the plaintiff.

2. The general rule that an attorney may not at the same
time represent parties whose interests conflict is subject to an
exception where he so acts with the full knowledge and consent
of both. If in the present instance the double representation
was fatal to the validity of the order of reinstatement it must
be because in an action of divorce it is against public policy for
the same attorney to represent both parties. The public has an
interest in seeing that a divorce is not granted except upon
legal grounds, and of course the willingness of both spouses to
sever the marital relation is quite beside the purpose. To allow
the same attorney to represent them would obviously pave the
way to judgments by agreement, and it may be assumed that
such a practice is not to be tolerated. But we agree with the
trial court that the defendant has no standing to invoke that
principle for his own relief. He has himself brought about the
condition of which he complains. He deliberately set the ma-
chinery to work to bring about a result which he desired—his
release from the marriage tie and the adjustment of property
interests. By reason of the death of the plaintiff the divorce is
no longer necessary to his freedom and is now merely a bar
to a claim upon property which he might otherwise assert. The
interest of good morals or the welfare of society would be in no
way promoted by permitting a rule designed to that end to be
made use of to accomplish so entirely selfish a purpose as that
for which it is now invoked. While there is some conflict in
judicial opinion on the subject, there is much authority for the
rule that neither party to a divorce can be heard to attack it on
the ground of consent or collusion. (9 R. C. L. 451; L. R. A.
1917 B, 460; *Bledsoe v. Seaman*, 77 Kan. 679, 95 Pac. 576.)
The motive for the assault upon the decree may well be a deter-
mining factor in case of doubt. The following quotations give
expression to this view:

Rhodes v. Rhodes.

"Independent of any other consideration, if the motion was properly made, and in due season, the court would order any judgment of divorce obtained by collusion or fraud to be set aside, not from any regard to the parties concerned, but from motives of public policy. In such a case, however, it should be made apparent, that the party so moving was acting from good motives, and not for any expected personal advantage." (*Singer v. Singer*, 41 Barb. [N. Y.] 139, 140.)

"Upon the plaintiff's own statement, she was a party to the perpetration of a fraud upon the court. She made an illegal agreement in order to secure the $1,000, which she alleges the defendant promised to pay her, and she now complains because of the defendant's failure to pay the amount which he promised. The purpose of the plaintiff is purely mercenary. She was willing to be a party to the perpetration of the fraud upon the court, but, because the defendant has not paid her the money which he promised her, she proclaims the fraud and asks a court of equity to set aside a judgment entered against her. The plaintiff is not in a position to invoke the aid of the court to relieve her from a situation in which, according to her testimony, she has been placed by her own participation in the fraud of which she now complains." (*Whittley v. Whittley*, 111 N. Y. Supp. 1078, 1079.)

"The public, however, has an interest in the proper maintenance of the marriage relation, and public policy forbids that the parties shall agree to its dissolution or shall enter into any collusion to bring about that result. . . . But this writ of error is not sued out to restore the marriage relation. Death has prevented that. The sole reason for entertaining this writ of error after the death of Mrs. Mallory is in order that plaintiff in error may be restored to his statutory rights in the property left by her. . . . We are of opinion that it would be inequitable and unjust to permit plaintiff in error to now prosecute this writ of error to a reversal of the decree for the sole purpose of permitting him to procure a share of that estate." (*Mallory v. Mallory*, 160 Ill. App. 417, 423.)

"It is clear to us that the appellant, in making such motion [to vacate a decree of divorce], was not actuated by proper motives or proceeding in good faith. . . . It was for her to make it appear that she was acting with good motives, and not from any increase of advantage that she hoped or expected to gain thereby." (*Wiemer v. Wiemer*, 21 N. D. 371, 376, 377.)

The judgment is affirmed.