Burnice H. DUNN, Appellant,

v.

Peggy Jean TIERNAN and Richard Tiernan, Appellees.

No. 5111.

Court of Civil Appeals of Texas.

El Paso.

Oct. 26, 1955.

Rehearing Denied Nov. 16, 1955.

Fryer, Milstead & Luscombe, El Paso, for appellant.

William C. Collins, El Paso, for appellees.

FRASER, Justice.

This is a child custody case. Burnice H. Dunn, appellant, and Peggy Jean Dunn Tiernan, appellee, were married in 1945, and had two children, Beverly Virginia Dunn, four years of age, and Syretta Ann Dunn, eight years of age. By contract in 1952 the mother granted exclusive custody of the children to the father. On February 12, 1953, appellant was granted a divorce in Juarez, Mexico, at a time when he was living in El Paso with the children. Appellant returned to South Carolina with his children where appellee obtained them in June, 1954, after giving appellant her written promise to return the children at the beginning of the school year. The former Mrs. Dunn, who had married Richard Tiernan in February, 1954, brought the children to El Paso and instituted suit in the Thirty-Fourth District Court for their custody. The appellant answered, challenged the jurisdiction of the El Paso District Court, and asserted that he was the proper person to have their custody. The trial Court having overruled appellant's plea to the jurisdiction, tried the case before a jury. The jury verdict was adverse to appellant.

Appellant's first two points are concerned with the action of the trial court in sustaining exceptions to the pleaded misconduct of appellee which appellant asserted occurred prior to the date of the Mexican decree, and excluding evidence of such misconduct by appellee. Appellant had pled and offered to prove acts of misconduct by appellee prior to the Juarez divorce in 1953, but the trial court in sustaining exceptions to such pleading and excluding such evidence held that the Juarez divorce was res adjudicata on the question of appellee's fitness prior to that decree, following thereby the well known Texas rule to that effect. Appellant challenged the validity of this Mexican divorce, and asserted that because neither party had lived in Mexico the Juarez court was without jurisdiction and the decree therefore invalid, and for that reason could not be res adjudicata anywhere. The trial court held that appellant was estopped to challenge the validity of the Juarez decree, and pursuant to this finding excluded the evidence and sustained exceptions to the plea.

756

We are not concerned here, of course, with the doctrine of full faith and credit clause of the United States Constitution, as same is not applicable to the judgments of foreign countries, nor do we have in this record any evidence of any treaty bearing on this matter.

There are cases holding that ordinarily a foreign divorce obtained through simulated residence is open to attack and its validity may be impeached. Golden v. Golden, 41 N.M. 356, 68 P.2d 928; Kadello v. Kadello, 220 Cal. 1, 29 P.2d 171; Broder v. Broder, 122 Cal.App. 296, 10 P.2d 182; Hanley v. Donoghue, 116 U.S. 1, 6 S.Ct. 242, 29 L.Ed. 535; Burk v. Burk, Tex. Civ.App., 255 S.W.2d 908; Ryder v. Ryder, 2 Cal.App.2d 426, 37 P.2d 1069.

This, however, is not a situation where one who is the victim of a void judgment seeks to set the same aside. Examination of the record reveals that appellant initiated the Juarez divorce and persuaded appellee to enter her appearance through a Juarez attorney; also that he had told appellee they were both now free to remarry; that he considered himself divorced, and at one time entertained the notion of marrying a woman in Durango, Mexico, and apparently did not challenge the validity of the Mexican decree for 22½ months after its rendition.

Examination of the judgment itself shows that the Juarez court apparently had full jurisdiction to render the decree that it did, and we think the trial court was correct in holding appellant estopped from challenging the validity of the Juarez decree. To have permitted him so to do would in effect permit him to take advantage of his own fraud, which he perpetrated on the Mexican courts.

This doctrine of estoppel to assert invalidity of a judgment proceeds upon the theory that it would be intolerable to permit the parties to enter into collusion to defraud the court and, each of the parties having enjoyed the fruits of their wrongful conduct, to permit one of them to afterwards assail the judgment collateral-ly. Moor v. Moor, Tex.Civ.App., 63 S.W. 347; Freeman on Judgments, § 1438.

Some cases have held that the concepts of justice will not countenance an attempt to so repudiate such jurisdiction, particularly when same would involve the unsettlement of domestic relations created under color of the judgment. Bruguiere v. Bruguiere, 172 Cal. 199, 155 P. 988; Loud v. Loud, 129 Mass. 14; Harding v. Harding, 198 U.S. 317, 25 S.Ct. 679, 49 L.Ed. 1066; Kaufman v. Kaufman, 177 App.Div. 162, 163 N.Y.S. 566.

The record in this case has revealed that appellee here, relying on the validity of the Mexican decree, has remarried, and at the time of the trial was expecting a child by her new husband, and that she and her new husband have a comfortable home where the two children here involved have apparently been happy with their mother and step-father. This latter was attested to by several apparently reliable witnesses and neighbors.

Other cases hold that a consent decree is valid and binding on parties consenting, and is open neither to direct appeal nor collateral attack. Certainly the Juarez divorce was a decree procured by and consented to by both appellant and appellee. Nashville, C. & St. L. Ry. Co. v. United States, 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971; Parish v. McGowan, 39 App.D.C. 184.

Other courts have held parties estopped to challenge jurisdiction of the divorcing court under circumstances similar to this one for the above grounds, and further because the party had waited eight or nine months or longer to challenge the validity of the divorce. McNeil v. McNeil, 9 Cir., 170 F. 289; McConnell v. McConnell, 135 Ga. 828, 70 S.E. 647; Bledsoe v. Seaman, 77 Kan. 679, 95 P. 576.

There are other cases holding along these lines, to-wit, that estoppel is created against a party challenging the validity of the foreign divorce which he himself has procured, and especially where in so doing he practiced a fraud on the divorcing court,

and also where the other party, in reliance upon such divorce, has altered the marital status, and especially where the challenger has waited for many months and has accepted during that period benefits from the challenged decree. Moore v. Hegeman, 92 N.Y. 521; Posten v. Delfelder, 39 Wyo. 163, 273 P. 176; Starbuck v. Starbuck, 173 N.Y. 503, 66 N.E. 193.

Other cases have enunciated the doctrine by emphasizing that estoppel is an equitable procedure and equity should never permit one to profit from his own fraud, especially to the disadvantage of another. Ellis v. Ellis, 55 Minn. 401, 56 N.W. 1056; Curry v. Curry, 65 App.D.C. 47, 79 F.2d 172; Weber v. Weber, 135 Misc. 717, 238 N.Y.S. 333; Kelsey v. Kelsey, 237 N.Y. 520, 143 N.E. 726.

 In the case before us appellant secured the decree he now seeks to declare invalid. Inasmuch as the decree recites on its face that both parties were within the jurisdiction of the court, the parties must have practiced fraud on the divorcing court. Appellant under this decree took or continued custody of the two children, certainly a benefit to him. He told appellee they were both free to marry again, causing her to fully rely on the validity of the decree, and she apparently did, because she remarried at a church wedding and at the time of the trial was pregnant by this marriage. Appellant also waited 22½ months before seeking to challenge the Juarez decree. In holding him estopped we think the court acted correctly. Estoppel being an equitable matter and divorce itself being an equitable matter, the principles of equity must apply. This being true it would not be equitable for he who was a party to the fraud and who had benefited therefrom, to now cry "fraud" to his own advantage and with disastrous effects upon appellee, her husband and all the children concerned. Nor is appellant free from the accusation of laches, having waited 22½ months. And of course, in the final analysis it must always be kept in mind that we are here dealing with a child custody case, where the best interests of the children are the paramount concern of the trial court, and the trial judge, who knew all the facts, if he thought proper could have handed down his own decision and disregarded the findings of the jury.

The trial court did not pass upon the validity of the Juarez divorce, nor do we. We merely hold appellant estopped from challenging its validity for the reasons and by virtue of the authorities set forth above. Appellant's first and second points are therefore overruled. 14 Texas Law Review, 261; 79 U. of Pa. Law Review, 158.

The case of Golden v. Golden, supra, decided by the Supreme Court of New Mexico, has been cited and urged as being a decision in line with appellant's theory and position, and it has been strongly urged that the reasoning of that case should be followed in the one before us. The court in that case did hold in a matter where both parties had colluded in obtaining a Mexican divorce that no estoppel confronted the challenge to the validity of the decree, saying that this being a divorce dissolving a New Mexico marriage, the state had an interest therein, the Juarez decree was without jurisdiction, and the decree could be collaterally attacked, even by one who had participated in obtaining it. Examination of this case, however, reveals that the majority opinion mentions another line of cases, and acknowledges the existence of a rule to the contrary. In distinguishing that line of cases from the case before it, the New Mexico Supreme Court says [41 N.M. 356, 68 P.2d 938]:

> "The decision in each of these cases can be explained upon the application of some well-known equitable maxim, such as that no one shall profit from his own wrong or that he who comes into equity must come with clean hands, without upholding the doctrine that the person denied relief was estopped by the former decree."

Then, later on, the Court also says:

> "The appellee received no material benefits under the purported decree of divorce in Mexico, and began her own

suit for divorce within less than one year. This would hardly sustain a charge of laches or acquiescence."

There were two fairly exhaustive dissenting opinions written in this case, but in any event it seems readily distinguishable, as in the case before us we do have strong evidence of laches, or acquiescence, and that appellant was seeking to profit by his own wrong. While this case has been very informative and helpful, we do not think the fact situation there was nearly as strong as here, and believe that court might conceivably have reached a different decision if the language quoted above may be given full force and effect, and those conditions described therein had been present.

Appellant's point three we think is disposed of by the reasoning set forth relative to points one and two. It is therefore overruled.

■ Appellant's point four again deals with the Mexican decree, stating that the provisions of the same are vague, indefinite and uncertain with reference to the adjudication of the children, and as such should not act as a bar to testimony prior thereto. Examination of the decree does not support this contention, we think, as the Juarez decree says the status of the children shall remain unchanged, and it is clear from the record that the status of the children at that time had been determined by a consent agreement entered into between the parties in South Carolina, giving appellant full custody. We do not believe there is sufficient merit in this point, and accordingly overrule the same.

■ Appellant's fifth point challenges the jurisdiction of the trial court in El Paso. It is clear from the record that appellee is a resident of this county, and

that the children were here with her with the consent of appellant. We think that is sufficient to confer jurisdiction upon the El Paso court. Campbell v. Stover, 101 Tex. 82, 104 S.W. 1047; Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1; Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187.

■ Appellant's sixth point asserts that by offering evidence as to her good general character and reputation appellee opened the door to testimony of her conduct and behavior prior to the Juarez divorce. We do not think this point is well taken, as appellee had a right and a duty in seeking custody and alleging changed conditions to show the living conditions in her new home, and the general reputation and the appearance of herself and her husband, and we do not think the evidence in this record justifies or permits the attempted introduction of specific acts of misconduct prior to the divorce, as under the state of the record here in litigating the allegation of "changed conditions" the trial court must concern itself with matters subsequent to the divorce. This point is overruled.

■ Appellant's seventh point claims that appellee's misconduct prior to the divorce was admissible as corroborative of alleged misconduct subsequent thereto. The record does not bear out this contention, as it concerns an incident involving a person named Tony who was at appellee's apartment after the divorce one day when appellant came to call by. The record does not show anything in this incident sufficient to invoke the doctrine or principle of corroboration, and this point is therefore overruled.

Appellant's points therefore are all accordingly overruled, and the decision of the trial court affirmed.