Howard J. SCHERER, Appellant,

v.

Carol L. SCHERER, Appellee.

No. 3–678A142.

Court of Appeals of Indiana, Fourth District.

May 28, 1980.

---

David H. Miller, Frank J. Gray, Ver Wiebe, Snow, Miller & Gray, Fort Wayne, for appellant.

John O. Feighner, Richard I. Snouffer, Snouffer, Haller & Colvin, Fort Wayne, for appellee.

MILLER, Presiding Judge.

This is an appeal from a summary judgment granted in favor of appellee Carol L. Scherer (wife) and denying a petition for dissolution of marriage filed by appellant Howard J. Scherer (husband).

We affirm.

The parties were married on January 19, 1970, one child was born to the marriage and they separated in October of 1976. On July 12, 1977, in the Allen Circuit Court, the husband filed a petition for dissolution of the marriage and prayed for an equitable distribution of property acquired during the marriage. The wife filed an answer in which she asserted several separate defenses:

1) The court lacked subject matter jurisdiction;

2) On January 17, 1977, both parties appeared before the Court of First Instance of the National District of the Dominican Republic, she in person and he by special power of attorney, proceedings were had, a final definitive divorce decree was rendered, and said decree was res judicata as to a divorce proceeding in Indiana (an authenticated copy of the decree was attached to the answer);

3) She relied upon the decree and representations of fact made by her husband and he was collaterally estopped from instituting an action for dissolution of marriage in Indiana;

4) On December 31, 1976 the parties executed a separation agreement disposing of real and personal property, child custody, visitation and support, which was in full and complete settlement of their rights in and to real and personal property and that in accordance with the specific provision that the agreement be made a part of any decree of dissolution, said agreement was merged into the foreign decree (a copy of the separation agreement was attached to the answer).

5) The doctrine of laches barred the divorce proceedings in Indiana.

On October 13, 1977, the wife filed a motion for summary judgment together with affidavits and supporting memorandum. In her memorandum she claimed the Dominican Republic divorce decree barred the Indiana proceeding. In support of her contention she argued the jurisdictional requirements of the Dominican Republic laws relative to divorce actions, which did not require domicile of either party, were satisfied by her physical presence in the Dominican Republic court and a voluntary appearance of her husband in the proceedings

through a special power of attorney he had executed for the express purpose of obtaining a divorce in the Dominican Republic. Thus, she argued, the decree was valid in the Dominican Republic and entitled to recognition in Indiana under the doctrine of comity. She further asserted her husband was estopped to challenge the validity of the Dominican Republic decree because he voluntarily submitted to the jurisdiction of the foreign court, he accepted the benefits of the foreign decree and she fully relied on the validity of the decree and had since remarried.

Following a hearing on January 6, 1978, the trial court granted summary judgment to the wife, finding the parties had obtained a valid bilateral divorce decree in the Dominican Republic on January 17, 1977, and that the husband was estopped to deny its validity. The court consequently dismissed the husband's petition.

The husband contends the trial court erred in granting summary judgment in contravention of Ind. Rules of Procedure, Trial Rule 56. Specifically, the husband claims the trial court's judgment was contrary to law in that foreign nation divorce decrees where neither spouse was a good faith domiciliary in the foreign nation at the time the decree was rendered are invalid in Indiana. He concedes there is no direct authority in this State to support his proposition. However, he urges Indiana should now adopt the majority position as enunciated in Annotation, *Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicile by Jurisdiction of the Parties*:

"Except in New York, foreign 'bilateral' divorce decrees, rendered upon the physical presence of the petitioning spouse in the divorcing nation and the voluntary appearance of the defendant spouse through an attorney, are not usually accorded domestic recognition."

13 A.L.R.2d § 3(d) at 1433.

The husband urges that his position is supported by Indiana case law dealing with recognition of decrees granted by sister states. We disagree. Notwithstanding the lack of domicile of the petitioning spouse, Indiana courts have afforded practical recognition, and give full faith and credit, to divorce decrees of the courts of sister states which have acquired the necessary jurisdiction of the subject matter and the parties, absent any fraud affecting jurisdiction. *Scott v. Scott*, (1949) 227 Ind. 396, 86 N.Ed.2d 533; *Abney v. Abney*, (1978) Ind. App., 374 N.E.2d 264, *cert. denied*, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34. Hence, if both parties to a marriage submit to the jurisdiction of another state for the purpose of obtaining a divorce they are estopped from attacking the decree by virtue of their participation. *See Ulrey v. Ulrey*, (1952) 231 Ind. 63, 106 N.E.2d 793. The Court in *Ulrey* admittedly found that a Nevada divorce decree obtained by a husband at a time when he was supposedly in Chicago was subject to attack in Indiana. But the Court was careful to point out in that case that the wife could not have attacked the Nevada decree in Indiana if the Nevada Court had acquired jurisdiction by personal service upon her in that state or if she had appeared in that action. Thus, proper domicile in a sister state is not an absolute prerequisite to recognition of that State's decree in Indiana; a party may be estopped from denying its validity.

In *Irons v. Irons*, (1961) 242 Ind. 504, 178 N.E.2d 156, our Supreme Court reiterated the rule of law expressed by the U. S. Supreme Court in *Williams v. North Carolina*, (1945) 325 U.S. 226, 233, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577 that

". . . [t]he challenged judgment must, however, satisfy our scrutiny that the reciprocal duty of respect owed by the States to one another's adjudications has been fairly discharged, *and has not been evaded under the guise of finding an absence of domicile and therefore a want of power in the court rendering the judgment.*

. . . The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant. . . ." (emphasis added)

*Irons* at 161. In *Irons* the Court held the wife—the party attacking the Nevada decree—failed to meet her burden of showing no domicile. The same Court overruled the wife's petition for rehearing, at 180 N.E.2d 106, noting the policy of according recognition to such foreign divorce decrees must continue in the absence of legislative declaration to the contrary:

"In passing on appellee's petition for rehearing, we believe it appropriate to state here that it is not our province as a reviewing court to consider whether the practice of obtaining so-called ex parte out of state divorces, by persons who have spent much of their married life in this state, is good or bad for the litigants or society in general. Certainly many arguments could be levelled against the propriety of such divorces. If a change in our substantive law in this respect is desired, resort should be had to the state or national legislatures, which have a wide area of discretion in this field, so long as they act within constitutional bounds."

*Id.* at 106.

The aforementioned cases involved divorce decrees which had been entered in sister states and the application thereto of the full faith and credit clause of the United States Constitution. Here, however, we are dealing with a decree of a foreign nation to which the principles of comity, rather than full faith and credit, apply. Am.Jur.2d *Divorce and Separation* § 964. Ordinarily, recognition of such foreign decrees depends upon whether at least one of the spouses was domiciled in the foreign nation when the decree of divorce was rendered. 13 A.L.R.3d, *supra,* § 3(a) at 1425. As noted above, "mail order" divorce decrees in which neither spouse has appeared personally in the foreign jurisdiction are not recognized in the United States. 13 A.L.R.3d, *supra,* § 3(b) at 1429. And this appears to be equally true in the case of "ex parte" divorce decrees in which an absent spouse is served only extraterritorially or constructively and does not actually appear or file an answer in the action. 13 A.L. R.3d, *supra,* § 3(c) at 1431. Only New York fully recognizes without equivocation the validity of "bilateral" divorce decrees in which the petitioning spouse appears in the foreign court and the defendant spouse appears by counsel. 13 A.L.R.3d, *supra,* § 3(d) at 1433. However,

"[n]otwithstanding the general invalidity of a divorce decree rendered in a foreign nation where neither spouse was domiciled, a number of courts have indicated that practical recognition may be accorded such decrees by estoppel, laches, unclean hands, or similar equitable doctrine under which the party attacking the decree may be effectively barred from securing a judgment of invalidity."

13 A.L.R.3d, *supra,* § 8(a) at 1452, and cases cited therein.

Accordingly, in a proper case, a person may be precluded from attacking the validity of a foreign divorce decree if under the circumstances it would be inequitable for him or her to do so. *See Dunn v. Tiernan,* (1955) Tex.Civ.App., 284 S.W.2d 754. In that case, the husband was estopped from challenging a decree where he initiated the proceeding in which both parties consented, he considered himself divorced and told his wife she was free to remarry, and he delayed in bringing his action. The husband had considered remarriage, and the wife did in fact remarry. The court further reasoned that if the foreign court did not have jurisdiction of the parties[1] they nevertheless should be prohibited from attacking it because "[i]nasmuch as the decree recites on its face that both parties [are] within the jurisdiction of the court, the parties must have practiced fraud on the divorcing court." *Id.* at 757. Both

---

1. The husband in our case contends that the Dominican Republic court lacked proper jurisdiction because, in alleged contravention of that nation's laws, the power of attorney was not properly notarized and was not "accurate as to fundamental facts and properly acknowl-

edged" because it incorrectly states that the husband resided in Woodburn, Indiana, and that the document was signed there. The further argument that the husband did not consent to the jurisdiction of the court is considered *infra.*

parties in *Dunn* were found to have accepted the benefits of the decree. *See also* *Chilcott v. Chilcott*, (1968) 257 Cal.App.2d 868, 65 Cal.Rptr. 263; and Restatement (Second) of Conflict of Laws § 74 at 224.

██ Participation in obtaining a foreign decree may be evidence of consent, and may thus prevent a party from attacking the decree. In *Webb v. Webb*, (1970) Tex. Civ.App., 461 S.W.2d 204, a recitation in the Mexican decree that both parties filed and the court had jurisdiction to grant it raised the issue that the wife participated in obtaining the divorce and could not subsequently challenge it. And *see* Restatement (Second) of Conflict of Laws § 74, Comment b at 225 (a party may be estopped from contesting a divorce decree where such action is inconsistent with his earlier conduct). The application of equitable estoppel to a foreign nation divorce decree cannot, however, be subjected to fixed and settled rules of universal application, but rests largely on the facts and circumstances of each particular case. *Weber v. Weber*, (1978) Neb., 265 N.W.2d 436.

██ Since the instant case involves an appeal from a grant of summary judgment, all doubts with respect to the facts in issue must be resolved against the moving party, who carries the burden of proving there are no material factual disputes. *Richards v. Georg Boat & Motors, Inc.*, (1979) Ind.App., 384 N.E.2d 1084. Summary judgment is appropriate under Trial Rule 56 only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. TR 56(C).[2]

The facts established by the affidavits and interrogatories in this case, and uncontradicted by the husband, are as follows:

Marital difficulties arose shortly after the parties were married in January 1970, and the husband frequently stated he desired a divorce. In the fall of 1976 the husband contacted an attorney, Howard S. Grimm, with whom he had prior business dealings, regarding the possibility of Grimm representing him in a divorce proceeding. In the latter part of October 1976 the parties met with the attorney, pursuant to prearrangement by the husband, and the husband agreed to obtain a Mexican divorce at the end of the current school year to avoid the notoriety of a local divorce. The parties discussed and indicated they were amenable to a separation agreement for the purpose of settling the matters of property, custody, support, and visitation. The husband moved out of the parties' residence in Woodburn, Indiana, that evening. On December 31, 1976 the parties and the attorney met at the husband's residence in Fort Wayne and both signed a separation agreement which the attorney had drafted. Under this agreement, the wife was to receive the Woodburn, Indiana residence which included 12.431 acres of land. She was also to receive certain personal property upon the payment of $37,000.00. The husband was to become the absolute owner of the business known as Scherer Industrial Waste Company, Inc., and all the items of personal property therein. He was also to become the sole owner of all common stock and certain antique furnishings. The husband agreed to pay child support of $55.00 per week for one child, the custody of whom was to be awarded to the wife. The husband executed the necessary quit claim deed and real estate mortgage which had

---

**2.** Public policy considerations may prevent the granting of divorces on summary judgment. *A. B. v. C. D.*, (1971) 150 Ind.App. 535, 277 N.E.2d 599. We see no reason, however, why a court may not establish through summary proceeding a defense which precludes a divorce, as in the instant case or where, for example, the parties fail to meet the statutory residency requirements. In *Rea v. Rea*, (D.D.C.1954) 124 F.Supp. 922, the case cited by the husband, the court noted it "does not intend to hold that a complaint may not be dismissed by a motion for [summary] judgment;" rather, the court "holds merely that a divorce may not be granted in this manner." *Id.* at 923. See also *Wagoner v. Wagoner*, (1970) 147 Ind.App. 696, 263 N.E.2d 657, where the Court affirmed the trial court's grant of summary judgment dismissing the husband's action to set aside a default decree.

been prepared pursuant to the agreement. In addition he executed a special power of attorney obtained for use in divorce proceedings in the Dominican Republic.

On January 14, 1977 the wife notified the husband she had made arrangements to travel to the Dominican Republic that day for the purpose of obtaining a divorce.[3] During the conversation the parties learned they would be traveling on the same plane because the husband had made plans to go to Florida. Later that day the parties boarded the flight for Cleveland and sat together, during which time the husband commented on how glad he was the marriage was over. In Cleveland they had a drink together before the wife continued to the Dominican Republic and the husband to Florida. On January 17, 1977, the wife appeared before the Dominican Republic Court in person and the husband appeared through counsel and a final divorce decree was rendered. In the Dominican Republic decree it is stated that the parties expressly submitted to the jurisdiction of the court, and that the husband appeared before the Court by his attorney. The decree also recited that both the husband and wife were domiciliaries of Indiana. The basis of the foreign decree as set forth therein, was "incompatibility of temperaments". The decree further expressly provided that the separation agreement executed by the parties on December 31, 1976 in Indiana, which was presented to the Dominican Republic Court and merged into the divorce decree, was not affected nor modified by the judgment and would survive in the form established by the laws of the place where the separation agreement was signed. The wife returned to Indiana the same day. The husband a few days later called her to see if the parties were in fact divorced, was told they were, and again expressed relief the marriage was over, stated he hoped they could continue to be friends. In the ensuing months the husband informed several people that he and his wife were no longer married since they had obtained a divorce in the Dominican Republic. Moreover, both parties accepted the benefits of the separation agreement incorporated into the divorce decree, and the wife assumed custody of the parties' child. The husband told his wife of his plans to remarry in July, and publicly accepted congratulations from friends. The husband also indicated to various people, however, that he wished he and his wife had not gone through with the divorce. The wife had married Howard Grimm on March 30, 1977.

Under the circumstances of this case, we believe the trial court was correct in its finding that the husband should be estopped from attacking the Dominican Republic decree. The husband's attack on the decree is inconsistent with his conduct before and after the foreign divorce. He initiated contact with an attorney for the purpose of possibly obtaining a divorce; he agreed to the parties obtaining a foreign divorce; he acquiesced in the procurement of the divorce by executing the pertinent documents; he considered himself divorced, expressed relief that the marriage was over, and stated his plans to remarry, and he waited six months to challenge the validity of the decree. Furthermore, action was taken in reliance on the divorce, including the wife's remarriage, in such a manner that it would now be inequitable to permit the husband to challenge the decree.

In his affidavit in opposition to the wife's motion for summary judgment the husband contends he did not knowingly consent to the Dominican Republic divorce and he did not knowingly and intelligently execute any of the documents relating to the dissolution of marriage, to wit: the special power of attorney, the separation agreement, the mortgage and the quit claim deed. He claims he had a "considerable amount to drink" the *night before,* and without specifying when or in what quantity, he states he "was also taking valium as a tranquilizer and did not realize that the

---

3. The wife states Mr. Grimm had determined Mexican divorces were no longer available to American citizens.

mixture of it and alcohol caused me to feel high and uncaring as to my actions." He further alleges at the time the various documents were signed the parties were drinking. The husband contends with respect to the documents themselves that the division of property in the separation agreement did not comport with his prior understanding of how the property would be apportioned, but the attorney stated changes in the agreement could be made later, and that he merely gave the other papers a quick glance before he signed them, and the attorney stated any blanks in the documents could be filled in later.

The husband apparently assumes he is not estopped from attacking the Dominican Republic decree if he can show he did not knowingly execute the power of attorney used to secure the decree. Although that document, if valid, is clearly evidence of the husband's participation and acquiescence in the foreign proceedings, we note at the outset that courts have not required that a party appear in person or by counsel in order to hold that he is estopped from attacking a decree. *See, e. g., In re Shank's Estate,* (1957) 154 Cal.App.2d 808, 316 P.2d 710, where the court stated that "no particular set of facts is necessary to invoke an equitable estoppel," in response to the husband's argument that estoppel has only been applied against a party who has induced the securing of an invalid divorce, participated in the proceeding itself, or remarried with knowledge of the facts. *Id.* at 711. In that case, the husband had actual notice of the divorce but did not appear in person or by counsel. Subsequent to the divorce, he "acquiesced in and relied upon the Mexican decree of divorce and conducted himself as if said decree were valid and effective," through acts including the purchasing of real property in his own name as a "single man," establishing a meretricious relationship with another woman, and living separately from his wife. *Id.* at 711–12. The court emphasized that after the husband was served with a summons and a copy of the complaint, "[h]e did nothing to ascertain their validity nor to attack the decree even though he knew that it had

been secured in Mexico." *Id.* Similarly, we conclude in the instant case that even without the power of attorney, there are numerous actions by the husband—who clearly had actual knowledge of the Dominican Republic proceedings—which should estop him from denying the validity of the decree.

The precise nature of the husband's argument in the instant case is far from clear. We do not believe that inattention in signing the documents, by itself, will act as a defense; the husband apparently argues that in addition to such inattention, or as the cause of it, he lacked capacity to understand what he was doing. A power of attorney is a contractual agency relationship, and incapacity, including intoxication, may in general be a defense to contracts undertaken by a party. *See* 6 I.L.E. Contracts § 61 at 115; *and, e. g., Reinskopf v. Rogge,* (1871) 37 Ind. 207; and *Cummings v. Henry,* (1858) 10 Ind. 109. The husband in this case does not allege, however, that he was intoxicated at the time he signed the power of attorney. Rather, he states that he had a "considerable amount to drink" the night before and that at an early hour of the morning he was "inebriated". But at the time of the signing—sometime after noon—he states by affidavit simply that the parties "were drinking." As noted above, his affidavit is ambiguous as to the taking of Valium. Thus, it does not appear that the husband has alleged material facts requiring determination by the trial court. But even assuming *arguendo* the husband was sufficiently intoxicated at the time he signed the power of attorney to deprive him of the requisite power of understanding, the courts have held such defenses to agreements may be waived and the party estopped by behavior inconsistent with his objections. *See, e. g., Lewis v. Kerns,* (S.D. Ind.1959) 175 F.Supp. 115, where the court held that a contract may be upheld—despite alleged duress—where the attacking party acted in accordance with the contract terms and delayed in bringing his subsequent action. It is settled law that "a person who tacitly encourages an act to be done cannot afterward exercise his legal right in opposi-

tion to such consent, where his conduct or acts of encouragement induced the other party to change his position so that he will be prejudiced by the assertion of such claim." 12 I.L.E. Estoppel § 49 at 382–3.

In the instant case the husband had ample time subsequent to December 31 to inquire into the nature of the papers he signed. He does not allege that he made any such effort either before January 17, the date of the divorce, or afterward. Indeed, he does not dispute that several days prior to the divorce he indicated his relief that the marriage was over. The same sentiment was expressed when he was told the proceedings were final. He clearly considered himself divorced and acted accordingly, including announcing his plans to remarry. In reliance on the foreign decree, the wife did remarry. The wife states, again without contradiction by opposing evidence, that following the Dominican Republic divorce proceeding the husband stated that she "should find someone else more suitable than him now that i was divorced." The husband has thus acquiesced in the divorce proceeding, and the wife has relied thereon, and he should be estopped from now attacking the validity of the power of attorney and the foreign divorce itself.[4]

In so affirming the judgment of the trial court in this action, we do not pass upon the validity of the Dominican Republic decree. We merely hold the husband is estopped from challenging its validity for the reasons and by virtue of the authorities set out above.

The judgment of the trial court is affirmed.

CHIPMAN and YOUNG, JJ., concur.

---

4. We note that the husband also seeks in his petition an equitable distribution of the parties' property, which a court is empowered to grant upon dissolution of a marriage pursuant to Ind. Code 31–1–11.5–11. Since we have determined, however, that the trial court properly denied the husband's petition for dissolution, it is unnecessary for this Court to decide what distribution would be equitable, and the parties have not argued this question.