In re the Marriage of W. Robert **BLAIR, Appellant–Petitioner,**

**v.**

**Patricia G. BLAIR, Appellee–Respondent.**

**No. 45A03–9403–CV–113.**

Court of Appeals of Indiana, Third District.

Nov. 30, 1994.

Rehearing Denied March 16, 1995.

**934**

Thomas G. Stayton, Andrew Z. Soshnick, Baker & Daniels, Indianapolis, Debra Lynch Dubovich, Levy & Dubovich, Highland, for appellant.

Eugene M. Feingold, Steven P. Kennedy, Law Offices of Eugene M. Feingold, Munster, Howard M. LeVine, LeVine, Wittenberg & Shugan, Homewood, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner W. Robert Blair appeals the trial court's determination that it was without jurisdiction to entertain Robert's petition for dissolution because the parties have not satisfied the residency requirements prescribed in IND.CODE § 31–1–11.5–6 (1992 Supp.). Further, Robert is appealing from the trial court's decision that Indiana would not recognize the purported dissolution Robert obtained in the Dominican Republic. The facts relevant to the appeal are related below.

Robert and Patricia were married in West Virginia on June 28, 1952. On August 27, 1990, Robert obtained a civil judgment of divorce in the Dominican Republic. Pursuant to the laws of the Dominican Republic, notice to Patricia was not required until after the judgment was entered. Patricia was not served with advance notice of the action or the hearing; Patricia was not present at the hearing, and personal service of Patricia was not obtained in the Dominican Republic.

In October 1990, Patricia filed an action for legal separation and/or dissolution of marriage in Cook County, Illinois. Patricia gained knowledge of the Dominican Republic decree in November 1990, when a copy was sent to her attorney. As part of her case pending in Cook County in December 1990, Patricia sought a declaration that the Dominican Republic decree was null and void.

In May 1991, in the Cook County proceeding, Robert filed a counter-petition for recognition of the Dominican Republic decree or in the alternative for dissolution of the marriage. The Cook County court entered an order refusing to recognize the Dominican Republic decree on July 8, 1991. Based upon their attempt to reconcile, Patricia dismissed the Cook County proceeding in August 1991.

Robert commenced the current action in Lake County, Indiana on January 6, 1993. He filed a complaint on a foreign judgment requesting recognition of the Dominican Republic decree and a petition for division of assets or in the alternative a petition for dissolution of marriage. Patricia filed a motion to dismiss in which she alleged that the trial court did not have jurisdiction to entertain the action because neither party met Indiana's residency requirements for dissolution, and because personal jurisdiction over Patricia was not properly obtained.

The parties had lived in a home in Park Forest, Illinois until 1979 when it, along with non-personal furnishings, were leased to tenants. The home was eventually sold. In approximately 1967, the parties had built a large vacation home in Crown Point, Indiana. Most of their personal belongings were moved to the Crown Point home when the Park Forest home was leased.

From the time of the Dominican Republic decree in 1990 until January 5, 1993 when Robert locked out Patricia, the parties resided at 605 West Madison, Tower Three, Apartment 3510, Chicago, Illinois. Prior to the "lock out," the parties usually spent Monday through Thursday at the Chicago apartment and the weekend at their Crown Point home. Robert's office was approximately eight blocks from the apartment. Patricia volunteered at a Chicago hospital.

On all documents submitted in Illinois, including the Dominican Republic decree, the Chicago apartment was listed as the address of both Patricia and Robert. Robert is a former Illinois state legislator and an attorney who practices exclusively in Illinois. Robert has been licensed to practice law in West Virginia as well but has never been a member of the Indiana bar. Robert holds an Illinois driver's license and has never been issued an Indiana driver's license. His automobile is licensed in Illinois through his business. He has been registered to vote in Illinois but never in Indiana. Further, he has never filed an Indiana state tax return.

After the "lock out," which occurred at approximately the same time that Robert filed this action, Patricia began staying at the Crown Point residence. With Robert's assistance, Patricia transferred her real estate license to Indiana after this action was filed. Patricia continued to hold an Illinois driver's license, her car was registered in Illinois, she filed Illinois tax returns, and she voted in the November 1992 election in Illinois.

Robert raises several issues for review. As restated the issues are:

(1) whether the trial court erred in converting Patricia's motion to dismiss into a motion for summary judgment;

(2) whether the trial court erred in determining that neither party met the residency requirements to invoke jurisdiction of the Indiana court regarding a dissolution action; and

(3) whether the trial court erred in refusing to recognize the Dominican Republic decree and divide the parties' assets.

 Robert first complains that the trial court improperly converted Patricia's motion to dismiss pursuant to Ind.Trial Rules 12(B)(1) and 12(B)(2), into a motion for summary judgment. Although it is true that it is error to treat such motions as those for summary judgment, the court's action was harmless and will not alter appropriate review of the errors alleged by Robert. *Cf. Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, 401 (motions to dismiss under T.R. 12(B)(1)–(5) and (7) not usually on merits of case and therefore not properly addressed by summary judgment; however, where issue presented to court and argued on appeal is subject-matter jurisdiction, review proper under T.R. 61 harmless error analysis).

 IND.CODE § 31–1–11.5–6(a)–(b) requires that "at least one (1) of the parties" to an action for dissolution or legal separation "shall have been a resident" of the state for six months and the county in which the petition is filed for three months "immediately preceding the filing" of the petition. As noted by the trial court, in Indiana, the term residence is synonymous with domicile. *Orejuela v. Orejuela* (1986), Ind.App., 494 N.E.2d 329, 331. The definition of domicile was addressed in *State Election Bd. v. Bayh* (1988), Ind., 521 N.E.2d 1313. The court stated:

> "Domicile means 'the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning.' ... Domicile can be established in one of three ways: 'domicile of origin or birth, domicile by choice, and domicile by operation of law.' ... [Citations omitted.]

\* \* \* \* \* \*

> Once acquired, domicile is presumed to continue because 'every man has a residence somewhere, and ... he does not lose the one until he has gained one in another place.' ... Establishing a new residence or domicile terminates the former domicile. A change of domicile requires an actual moving with an intent to go to a given place and remain there. 'It must be an intention coupled with acts evidencing that intention to make the new domicile a home in fact.... [T]here must be the intention to abandon the old domicile; the intention to acquire a new one; and residence in the new place in order to accomplish a change of domicile.' [Citations omitted.]

\* \* \* \* \* . \*

> The question of residence is 'a contextual determination to be made by a court upon a consideration of the individual facts of any case.' ... Physical presence in a place is only one circumstance in determining domicile.... [Citations omitted.]"

*Id.* at 1317–1318.

Robert argues that both he and Patricia are residents of Indiana, inasmuch as they fully intended to make the Crown Point home their permanent domicile after the Park Forest home was leased. Robert contends that ownership of the Crown Point home, significant improvements to the home and their presence at the home on weekends, together with evidence that mail was received at the Crown Point home, the parties participated in the homeowner's association and their boat was registered in Indiana demonstrate their intent to make Crown Point their permanent place of domicile.

The trial court determined that under the *Bayh* test Robert had not taken sufficient steps to terminate his domicile in Illinois, notwithstanding his presence in Indiana on weekends, to permit the court subject-matter jurisdiction over dissolution proceedings.

■ Viewing the indicia of residency outlined in *Bayh,* within the context of the evidence in the present case, the trial court correctly determined that Robert has not established that he terminated his residence in Illinois. However, as argued by Robert, only one of the parties need be domiciled in Indiana to invoke jurisdiction. Robert contends that Patricia is an Indiana resident.

The trial court took the view that a wife's place of domicile follows that of the husband. *See e.g. Person v. Person* (1990), Ind.App., 563 N.E.2d 161, 164; *In Re Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107, 111. However, in *Hudson* the Court noted:

> "[I]t is also recognized that strict adherence to the rule is inconsistent with ... [laws] according women full legal capacity; it is unseemly reminiscent of the long discredited fictional identity of husband and wife.... The majority of jurisdictions, including Indiana, have therefore concluded a married woman may establish a residence or domicile separate from her husband for whatever reason, and the usual test for determining a party's residence may apply."

*Id.*

■ Analyzing Patricia's indicia of residence, including conflicting testimony as to additional time Patricia spent at the Crown Point home, it is apparent that she did not evidence an intention to terminate her residency in Illinois. This is especially true prior to the time she was "locked out" of the Chicago apartment. Moreover, that Patricia had a more extensive physical presence at the Crown Point home after this action was filed by Robert, and that she subsequently had her real estate license transferred to Indiana, do not establish domicile in Indiana for the requisite period, if at all. Thus, the trial court correctly determined that it did not have jurisdiction over the petition for dissolution.

Finally, the lack of jurisdiction over the dissolution proceedings based upon statutory requirements, does not extend to the portion of Robert's petition concerning recognition of a foreign judgment and division of marital property related thereto. Inasmuch as personal jurisdiction over Patricia was obtained, the court could proceed as with any action in making a determination as to the validity of the Dominican Republic decree.

Patricia acknowledges that her dismissal of the action in the Illinois court extinguished any binding effect of that court's order refusing to recognize the validity of the Dominican Republic decree. However, Patricia asserts that she did not accept or acquiesce in the decree once she became aware of its existence. Instead, she resisted its viability and only dismissed her action with the belief that she and Robert were still married and that dismissal would allow a reconciliation.

The parties and the trial court rely upon the analysis in *Scherer v. Scherer* (1980), Ind.App., 405 N.E.2d 40, regarding the propriety of the Dominican Republic decree. In *Scherer* the efficacy of a divorce decree obtained in the Dominican Republic was at issue. This Court stated:

> "[W]e are dealing with a decree of a foreign nation to which the principles of comity rather than full faith and credit, apply. Ordinarily, recognition of such foreign decrees depends upon whether at least one of the spouses was domiciled in the foreign nation when the decree of divorce was rendered. As noted above, 'mail order' divorce decrees in which neither spouse has appeared personally in the foreign jurisdiction are not recognized in the United States. And this appears to be equally true in the case of 'ex parte' divorce decrees in which an absent spouse is served only extraterritorially or constructively and does not actually appear or file an answer in the action. [Citations omitted.]

\* \* \* \* \* \*

> [I]n a proper case, a person may be precluded from attacking the validity of a foreign divorce decree if under the circum-

stances it would be inequitable for him or her to do so.

\* \* \* \* \* \*

The application of equitable estoppel to a foreign nation divorce decree cannot, however, be subjected to fixed and settled rules of universal application, but rests largely on the facts and circumstances of each particular case. [Citations omitted.]"

*Id.* at 44–45 (examples of circumstances under which the parties would be estopped to deny the validity of a foreign decree were outlined: 1) circumstance where both parties consented and spouse challenging decree held himself out as divorced person while informing other spouse she was free to remarry which she did, parties accepted benefits of the decree; and 2) circumstance where challenge to decree is inconsistent with party's earlier conduct, wife participated in obtaining divorce).

Here, the undisputed evidence establishes that Patricia was never in the Dominican Republic, that neither she nor her representatives were given notice of the filing of the matter or any hearing held, that she was unaware of the decree for a substantial time after it was entered, that she immediately challenged the decree in an action that was later dismissed to promote the parties' reconciliation, and that she always held herself out as and believed herself to be married. While it is true that Patricia testified that Robert continued to assert that remarriage would be necessary if the reconciliation worked, that circumstance alone does not establish the viability of the foreign decree and is far outweighed by the other factors present. The trial court properly refused to recognize the Dominican Republic decree.

There being no finding of reversible error, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and KIRSCH, JJ., concur.